UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SPENCER HAHN, individually and on behalf of others similarly situated,

                Plaintiff,

   -against-

JETBLUE AIRWAYS CORPORATION,

                Defendant.
-------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
21-CV-6867 (CBA) (LB)

**AMON, United States District Judge:**

## INTRODUCTION

Plaintiff Spencer Hahn ("Hahn") filed a class action complaint against Defendant JetBlue Airways Corporation ("JetBlue"), alleging breach of contract under New York law for JetBlue's failure to return the $5.60 September 11th Security Fee ("TSA Fee") to customers who cancelled their airline tickets or otherwise did not travel. JetBlue now moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, JetBlue's 12(b)(1) motion is DENIED, its 12(b)(6) motion is GRANTED, and Hahn's class action allegations are DISMISSED.

## BACKGROUND

On December 13, 2021, Hahn filed his complaint on behalf of a purported class of "[a]ll passengers who booked travel with JetBlue and paid JetBlue a TSA Passenger Fee, and who canceled such travel, within the past 6 years." (ECF Docket Entry ("D.E.") # 1 ("Compl.") ¶ 19.) The complaint includes a single cause of action for breach of contract under New York law. (Id. ¶¶ 28-31.) The alleged breach is based upon a refund provision in the contract of carriage that accompanied a ticket he purchased from JetBlue (the "Contract of Carriage"). (See id. ¶ 29.) The

1

complaint's prayer for relief includes a request for actual damages, an injunction, and pre-judgment and post-judgment interest. (Id. at 9.) Except as noted, the following facts are taken from the complaint and are presumed to be true for the purposes of JetBlue's motion. See Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013).

On August 3, 2021, Hahn purchased an airline ticket to fly from Los Angeles to San Francisco on jetblue.com for $58.40. (Compl. ¶ 6.) The $58.40 cost included airfare in the "Blue Basic" category, taxes, and the $5.60 TSA Fee. (Id. ¶¶ 1, 6-7.) The Contract of Carriage stated that "[t]axes and fees will not be refunded except when required by applicable law and, where permitted, only upon written request by Passenger." (Id. ¶ 10.)[1]

The TSA Fee is "used to pay the United States government's cost for providing Federal civil aviation security services." (Id. ¶ 29.) Federal regulations state that "[a]ny changes by the passenger to the itinerary are subject to additional collection or refund of the security service fee . . . as appropriate." (Id. ¶ 12 (quoting 49 C.F.R. § 1510.9(b)).) A 2006 report by the Office of the Inspector General of the United States Department of Homeland Security explained that, per 49 C.F.R. §§ 1510.9(b) and 1510.11, "air carriers have no grounds to keep fees of any kind that are owed to the ticket purchaser or TSA." (Id. ¶ 13 (quoting Off. of Inspector Gen., Dep't of Homeland Sec., OIG-06-35, Review of the Transportation Security Administration (TSA) Collection of Security Service Fees (2006)).) Similarly, the United States Government Accountability Office issued a report in 2010 stating that "consumers with unused nonrefundable tickets with expired or lost value are entitled to a full refund of the September 11th Security Fee, but few consumers request a refund because airlines are not required to inform consumers of this."

---

[1] The complaint cites provision 4.a.2.b of the Contract of Carriage as the source of this quote, although it appears in section 4.a.2.c of the Contract of Carriage attached to the Declaration of Nicole L. Gurdoglanyan. (Compare Compl. ¶ 10, with D.E. # 16-5 ("CoC") § 4.a.2.c.) Hahn admits in his opposition brief that the Contract of Carriage JetBlue attached to its briefing is accurate. (D.E. # 17 ("Opp'n") at 13 n.33.)

(Id. ¶ 14 (quoting U.S. Gov't Accountability Off., GAO-10-785, <u>Commercial Aviation: Consumers Could Benefit from Better Information about Airline-Imposed Fees and Refundability of Government-Imposed Taxes and Fees</u> (2010)).)

The Contract of Carriage also included rules governing legal conflicts related to the ticket purchase.[2] Specifically, as relevant to the instant motion, section 40 of the Contract of Carriage states that:

> United States federal law shall govern any matter relating to or arising under this Contract of Carriage. To the extent any such matter is not preempted by federal law, the laws of the State of New York shall apply, without regard to conflict of laws principles . . . . Each Passenger agrees, on behalf of themselves and anyone on whose behalf they are purchasing, that any lawsuit brought against Carrier or any of its affiliated entities, agents, directors, employees, and/or officers related to this Contract of Carriage, their ticket, and/or their use of or dealings with Carrier's website will be brought only in an individual capacity and may not be brought, alleged or asserted as part of a class action proceeding.

(CoC § 40.)

On November 23, 2021, Hahn cancelled his itinerary in full and requested a refund of his TSA Fee through JetBlue's website. (Compl. ¶¶ 7, 12.) A JetBlue agent informed him that his Blue Basic fare had a $100 cancellation fee, and so none of his $58.40 would be refunded. (Id. ¶¶ 7-8.) When Hahn inquired specifically about the TSA Fee, the agent confirmed that no refund would be issued. (Id.)

On December 30, 2021, JetBlue returned $5.60 to the credit card Hahn had used to purchase his ticket.[3] (D.E. # 16-1 ("Gurdoglanyan Decl.") ¶ 8; D.E. # 16-3 (refund receipt).)

---

[2] The complaint cites only limited language from the Contract of Carriage. Because Hahn has sued for breach of the Contract of Carriage, (see Compl. ¶ 10), however, I may consider the entire Contract of Carriage as incorporated by reference into the complaint. <u>Verzani v. Costco Wholesale Corp.</u>, 641 F. Supp. 2d 291, 297-98 (S.D.N.Y. 2009) ("[W]here the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim.").

[3] This fact comes from the papers accompanying JetBlue's motion to dismiss; it was not pleaded in the complaint because it occurred two weeks after the complaint was filed. As it is relevant to JetBlue's 12(b)(1) motion, I may nonetheless consider it with respect to that motion. See <u>Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l.</u>, 790 F.3d 411, 417 (2d Cir. 2015).

3

## STANDARD OF REVIEW

"A district court properly dismisses an action under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' . . . ." Cortlandt St., 790 F.3d at 416-17 (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff," Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004), but "the court may also rely on evidence outside the complaint," Cortlandt St., 790 F.3d at 417. The plaintiff carries the burden to prove that claims are justiciable in federal court. See Renne v. Geary, 501 U.S. 312, 316 (1991). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, 'the court should consider the Rule 12(b)(1) challenge first . . . .'" Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (1969)). Moreover, I am "obligated to consider sua sponte [jurisdictional] issues that the parties have disclaimed or have not presented" in addition to the jurisdictional issues the parties have squarely presented. Gonzalez v. Thaler, 565 U.S. 134, 141 (2012).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A complaint will be dismissed unless the plaintiff states a claim that is "plausible on its face" by alleging sufficient facts for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must dismiss a claim if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id. at 679. Although courts will not credit "conclusory

statements" or "[t]hreadbare recitals of the elements of a cause of action," id. at 678, the court must accept as true all material allegations and draw all reasonable inferences in the plaintiff's favor, Johnson, 711 F.3d at 275.

## DISCUSSION

### I. Rule 12(b)(1)

JetBlue argues that Hahn lacks standing because he has no injury-in-fact and that his claims are moot. JetBlue's briefing joins the standing and mootness inquiries into one test. (D.E. # 18-1 ("Reply") at 3 ("As Plaintiff's claim has been mooted, he lacks standing under Article III.").) But standing and mootness are two different inquiries: "While standing focuses on the status of the parties when an action is commenced, the mootness doctrine requires that the plaintiffs' claims remain alive throughout the course of the proceedings." Etuk v. Slattery, 936 F.2d 1433, 1441 (2d Cir. 1991). "The distinction matters because the [defendant], not [the plaintiff], bears the burden to establish that a once-live case has become moot." West Virginia v. EPA, 142 S. Ct. 2587, 2607 (2022). Accordingly, I analyze the two theories separately.

In the 12(b)(6) portion if its motion, JetBlue argues that Hahn waived his ability to bring a class action suit. Hahn points out in opposition that "JetBlue's class action waiver, if enforceable, would potentially impact the court's subject matter jurisdiction." (Opp'n 13 n.30.) Because I must consider subject matter jurisdiction sua sponte, I also consider whether any class waiver is relevant to this Court's subject matter jurisdiction over the complaint.

#### a. Standing

"Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 19 F.4th

58, 62 (2d Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). "[S]tanding is to be determined as of the commencement of suit . . . ." Lujan, 504 U.S. at 570 n.5. JetBlue argues that redress is impossible because it returned the $5.60 to Hahn's bank account. But JetBlue's redressability argument is based on a refund that occurred weeks after the commencement of suit. Because Hahn pleaded the requirements of standing at the time he filed the complaint, I reject JetBlue's standing challenge.

  b. **Mootness**

JetBlue argues that the crediting of $5.60 to Hahn two weeks after he filed his complaint also mooted his claims. The theory is that Hahn "has been made whole" by the "refund[]" and so "it is impossible for the Court to grant any effectual relief to Plaintiff." (D.E. # 16 at 5.) Assuming that Hahn's personal claim is moot, JetBlue then argues that his claim on behalf of the putative class is moot as well.

Hahn argues that "[e]ven if judgment were not required to moot Mr. Hahn's claims, the $5.60 credit did not satisfy the demands in Mr. Hahn's complaint, which included . . . pre-judgment interest." (Opp'n 11 n.6.) Indeed, Hahn's prayer for relief included a request for "[p]re-judgment at the maximum rate of interest permitted by law." (Compl. 9.) JetBlue's motion to dismiss does not question Hahn's entitlement to prejudgment interest should he prevail on the merits.[4]

"As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Chafin v. Chafin, 568 U.S. 165, 172 (2013) (quoting Knox v. Serv. Emps. Int'l Union, Loc. 1000, 567 U.S. 298, 307 (2012)). Accordingly, courts faced with

---

[4] As relevant here, New York Civil Procedure Law § 5001 provides for interest on breach of contract claims, "computed from the earliest ascertainable date the cause of action existed," and § 5004 sets interest at the rate of "nine per centum per annum."

unsettled prayers for prejudgment interest have declined to dismiss claims as moot. See, e.g., Templin v. Indep. Blue Cross, 487 F. App'x 6, 11 (3d Cir. 2012) (not precedential) ("Voluntary payment of withheld benefits after initiation of a lawsuit does not necessarily moot the plaintiffs' claims, since they have requested interest in their complaint."); Parella v. Ret. Bd. of R.I. Emps.' Ret. Sys., 173 F.3d 46, 57 (1st Cir. 1999) (holding a case was not moot where plaintiff sought interest even after refund because "the possibility of even a partial remedy is sufficient to prevent a case from being moot"); Gildor v. USPS, 491 F. Supp. 2d 305, 308 (N.D.N.Y. 2007) ("Because, if successful, Plaintiff may be entitled to prejudgment interest of nine percent per annum, USPS's settlement offer, which does not encompass that amount, cannot be determined to moot the case before the court."); Schlembach v. Empire Blue Cross & Blue Shield, No. 97-cv-4499 (JG), 1998 WL 817686, at *3 (E.D.N.Y. Feb. 18, 1998) ("Plaintiffs' claim is still viable because they have requested damages in the form of pre-judgment interest . . . ."). Accordingly, because Hahn's claim for prejudgment interest has not been satisfied, the case is not moot.[5]

   c. **Subject Matter Jurisdiction**

The complaint's only ground for federal subject matter jurisdiction is 28 U.S.C. § 1332(d), the provision that codifies the Class Action Fairness Act of 2005 ("CAFA"). CAFA confers federal jurisdiction over class actions where "(1) the proposed class contains at least 100 members . . . ; (2) minimal diversity exists between the parties . . . ; and (3) the aggregate amount in controversy exceeds $5,000,000." Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013). "CAFA's reach, however, is limited in the first instance to actions that qualify as either a 'class action' or a 'mass action.'" Id. (quoting 28 U.S.C. § 1332(d)). "Actions that fail to fit into

---

[5] Because I find that Hahn's request for prejudgment interest means his claim is live, I need not consider the parties' dispute over whether his potential incentive award as class representative is a tangible interest through which he could avoid mootness. Similarly, because Hahn's individual claim is not moot, I need not consider whether the class claims would be mooted by the loss of his individual claim.

7

one of these two statutory categories will fall outside CAFA's jurisdictional orbit, regardless whether they meet the other prerequisites of numerosity, minimal diversity, and amount in controversy." Id. at 214. Therefore, whether an action meets CAFA's definition of a "class action" is a "threshold inquiry." Id.

Given CAFA's requirement that an action be a class action, it might seem intuitive that a judicial ruling that prevents a case from proceeding as a class action would deprive the court of CAFA jurisdiction. The Second Circuit, however, rejected that proposition in F5 Capital v. Pappas, 856 F.3d 61 (2d Cir. 2017). The F5 court concluded that the plaintiff's purported class action claim could not be brought as a class action because it was legally deficient—specifically, the claim should have been brought as a shareholder derivative claim, not as a class action. Id. at 76. The Second Circuit explained, however, that because at the time the case was brought to federal court the complaint "appeared to plead in good faith the class claim necessary for jurisdiction, the fact that the court subsequently determined that the case could not proceed as a class action under CAFA did not deprive it of subject matter jurisdiction." Id. at 77. Accordingly, even if I find the class action waiver here enforceable, there is no indication, and JetBlue does not argue, that Hahn brought this claim as a class action in bad faith. The fact that it could not legally be brought as a class action is not controlling—the same was true in F5. Accordingly, because Hahn otherwise pleaded facts sufficient to establish CAFA jurisdiction,[6] the Court has jurisdiction to consider Hahn's claims.

---

[6] "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994). In determining whether a reasonable probability exists, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). The complaint pleads that "the amount in controversy exceeds $5,000,000." (Compl. ¶ 3.) Because JetBlue does not contend that Hahn's $5,000,000 claim was not made in good faith, Hahn's conclusory statement of the amount in controversy is sufficient. Cf. Pena v. Gen. Motors Fin. Co., No. 20-cv-9294 (NSR), 2022 WL 889434, at *2 (S.D.N.Y. Mar. 25, 2022) (holding that a conclusory statement of amount in

## II. Rule 12(b)(6)

In its motion, JetBlue argues that the class action waiver in the Contract of Carriage bars Hahn from bringing his claim on behalf of a class.[7] The existence of a contractual waiver of a plaintiff's legal rights is an affirmative defense under New York law. See Banc of Am. Sec. LLC v. Solow Bldg. Co. II, 847 N.Y.S.2d 49, 53-54 (App. Div. 2007) ("The contention that BAS waived its right to recover monetary damages under the limitation on recovery provision is an affirmative defense . . . ."); see also Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc., 643 N.E.2d 504, 506 (N.Y. 1994) ("Defendant interposed the limitation on liability contained in section 7 of the parties' Agreement as a partial affirmative defense."). "[A] defendant asserting an affirmative defense bears the burden of proof with respect to that defense." Barton Grp., Inc. v. NCR Corp., 796 F. Supp. 2d 473, 498 (S.D.N.Y. 2011). "Ordinarily, a defendant may not raise affirmative defenses in a pre-answer motion to dismiss," Edwards v. McMillen Cap., LLC, 574 F. Supp. 3d 52, 66 (D. Conn. 2021), because "the facts necessary to establish an affirmative defense generally must be shown by matter outside the complaint," 5 Charles Alan Wright et al., Federal Practice and Procedure § 1277 (4th ed., update 2022). Accordingly, at least one district court has deferred consideration of a class action waiver's applicability until after discovery where its applicability was not obvious from the face of a complaint. Tanasi v. New All. Bank, No. 12-cv-646 (WMS), 2013 WL 12308197, at *8 (W.D.N.Y. Aug. 27, 2013) (deferring ruling on class waiver that may have appeared in some putative class members contracts but not in the lead plaintiff's contract).

---

controversy is not enough if "a party opposing jurisdiction makes . . . a showing" that "the claim is really for less than the jurisdictional amount" to "a legal certainty" (quoting St. Paul, 303 U.S. at 289)).

[7] In its reply brief, JetBlue advances a separate, substantive 12(b)(6) argument: that regardless of the class action waiver, "federal regulations and the contract of carriage do not require a refund of the TSA fee." (Reply 6.) JetBlue completely omits this argument from its original motion. "There is no apparent reason Defendant could not have made this argument in its Motion and thus it should be deemed waived because it was raised for the first time in Defendant's Reply Brief." Cadoret v. Sikorsky Aircraft Corp., 323 F. Supp. 3d 319, 326 n.7 (D. Conn. 2018).

On the other hand, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998). As discussed, see supra note 2, the Contract of Carriage is incorporated by reference into the complaint because Hahn's claim is for its breach, see Verzani, 641 F. Supp. 2d at 297-98 ("[W]here the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim."). On its face, the Contract of Carriage contains a straightforward waiver of Hahn's right to bring a class action suit, preventing him from bringing any lawsuit "as part of a class action proceeding." (CoC § 40.) Hahn argues, however, that class action waivers are unenforceable in New York; that the class action waiver in the Contract of Carriage is unconscionable; and that he never consented to the class action waiver. As explained below, these arguments can be resolved as a matter of law based solely on the facts pleaded in the complaint and in the incorporated Contract of Carriage without the need for further factual development.

a. **Enforceability of Class Action Waivers**

Hahn argues that class action waivers are generally unenforceable under New York law. He admits that "[a]uthority is scant" on the enforceability of class action waivers divorced from arbitration clauses, (Opp'n 20), but argues that the New York County Supreme Court's decision in Pressley v. Ford Models, Inc., No. 653001/2016, 2018 WL 2136448 (N.Y. Sup. Ct. May 9, 2018), supports his proposition. The Pressley court stated that "under First Department precedent, class action waivers are unenforceable," but did not itself rule on the issue of class action–waiver enforceability or provide any analysis. 2018 WL 2136448, at *9. Moreover, its only citation in support of its understanding of "First Department precedent" was Gold v. New York Life

10

Insurance Co., 59 N.Y.S.3d 316 (App. Div. 2017), which was later reversed on appeal when the New York Court of Appeals determined that the underlying class action waiver was enforceable. Gold v. N.Y. Life Ins. Co., 111 N.E.3d 321, 322 (N.Y. 2018). Accordingly, Pressley is entirely unpersuasive on this point. With no governing case holding that class action waivers are unenforceable in New York, I decline to find that New York courts would so rule.

Next, Hahn argues that class action waivers are unenforceable because high filing fees and low rewards mean that "no one in Mr. Hahn's position would be able to sue or recover damages." (Opp'n 19.) But, as JetBlue points out, the fact that a lawsuit will not be lucrative does not mean that a plaintiff is barred from suing: "[M]any a plaintiff has sued to vindicate a perceived wrong, regardless of the financial stakes." (Reply 9.) And, as the Supreme Court pointed out in the context of class action waivers accompanying arbitration clauses:

> [A class action waiver] no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938. Or, to put it differently, the individual suit that was considered adequate to assure "effective vindication" of a federal right before adoption of class-action procedures did not suddenly become "ineffective vindication" upon their adoption.

Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 236-37 (2013) (citations omitted).

Hahn also argues that the waiver is unenforceable as encroaching on the Court's authority under Federal Rule of Civil Procedure 23.[8] Hahn cites no cases standing for this proposition. In Italian Colors, the Supreme Court explained that "congressional approval of Rule 23 [does not] establish an entitlement to class proceedings for the vindication of statutory rights" because "it is likely that such an entitlement, invalidating private arbitration agreements denying class

---

[8] JetBlue failed to touch on this argument in reply. "[U]nlike where a non-movant fails to address an argument raised in a motion, there is no reason here to find that Defendant['s] failure to address this issue in a discretionary reply amounts to a waiver of this argument." Sawyer v. N.Y. State Dep't of Corr. Servs., No. 11-cv-152 (WMS), 2015 WL 6641471, at *2 (W.D.N.Y. Oct. 28, 2015).

adjudication, would be an 'abridg[ment]' or 'modif[ication]' of a 'substantive right' forbidden to the Rules." 570 U.S. at 234 (second and third alterations in original) (quoting 28 U.S.C. § 2072(b)). That reasoning applies equally to private agreements containing class action waivers outside the arbitration context. See Lindsay v. Carnival Corp., No. C20-982 TSZ, 2021 WL 2682566, at *4 (W.D. Wash. June 30, 2021) (applying Italian Colors to reject Rule 23 challenge to class action waiver unaccompanied by arbitration clause); Delaney v. FTS Int'l Servs., LLC, No. 16-cv-662, 2017 WL 264463, at *8 n.9 (M.D. Pa. Jan. 20, 2017) (holding "that the right to pursue collective litigation of state law claims through Federal Rule of Civil Procedure 23 is subject to waiver" in contract that lacked an arbitration clause). Accordingly, a federal court may enforce a class action waiver regardless of Rule 23.

    **b. Unconscionability**

Hahn also argues that the class action waiver in the Contract of Carriage is unconscionable. "An unconscionable contract has been defined as one which 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms.'" Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988) (quoting Mandel v. Liebman, 100 N.E.2d 149, 152 (N.Y. 1951)). "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made . . . ." Id. "The procedural element . . . requires an examination of the contract formation process and the alleged lack of meaningful choice," id., while the substantive component "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged," id. at 829. "[P]rocedural and substantive unconscionability operate on a sliding scale; the more questionable the meaningfulness of choice, the less imbalance in a

12

contract's terms should be tolerated and vice versa." David v. # 1 Mktg. Serv., Inc., 979 N.Y.S.2d 375, 378-79 (App. Div. 2014) (quoting Simar Holding Corp. v. GSC, 928 N.Y.S.2d 592, 595 (App. Div. 2011)).

Hahn admits that "unconscionability is a purely legal argument," but also argues that "[t]o the extent that Defendant disputes procedural unconscionability, Defendant raises factual issues that should not be resolved in a Rule 12(b) motion to dismiss." (Opp'n 22.) Hahn does not argue, however, that there are any factual issues in the way of resolving substantive unconscionability at this stage. Nor could he: although unconscionability's "procedural elements must be identified by resort to evidence of the contract formation process," the "[s]ubstantive elements of unconscionability appear in the content of the contract per se." Becque v. Egan (In re Friedman), 407 N.Y.S.2d 999, 1008 (App. Div. 1978).

Here, the class action waiver is not substantively unconscionable. New York courts appear to have rejected the idea that class action waivers are substantively unconscionable. In the context of class action waivers accompanying arbitration clauses, "[c]ourts applying New York law . . . have uniformly held that class action waivers are not unconscionable." Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009); see also Tsadilas v. Providian Nat'l Bank, 786 N.Y.S.2d 478, 480 (App. Div. 2004) ("Under New York law, 'a contractual proscription against class actions . . . is neither unconscionable nor violative of public policy.'" (quoting Ranieri v. Bell Atl. Mobile, 759 N.Y.S.2d 448, 449 (App. Div. 2003))). If it is not unconscionable to force a plaintiff into individual suit in an arbitration, it is unclear why there would be something unconscionable about doing the same outside of arbitration.

Because the contract is not substantively unconscionable on the face of the incorporated Contract of Carriage, no facts Hahn could deduce in discovery would prove the waiver

unconscionable. Although "there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone," Gillman, 534 N.E.2d at 829, "procedural unconscionability alone may not render a contract unreasonable on its face," Berkson v. Gogo LLC, 97 F. Supp. 3d 359, 392 (E.D.N.Y. 2015); see also In re Lyondell Chem. Co., 585 B.R. 41, 54 (S.D.N.Y. 2018) (holding, without considering procedural unconscionability, that limitation-of-liability clause was "not unenforceable as unconscionable" because it was "not . . . substantively unconscionable").[9] Accordingly, because the waiver is not substantively unconscionable, it is not legally unconscionable.

c. **Consent to the Waiver**

Hahn's third argument is that he did not assent to the class action waiver because "JetBlue has failed to show that its website drew Mr. Hahn's attention to the class action waiver." (Opp'n 17.) In order to be bound by the terms of a contract, a party must have had actual notice or inquiry notice of those terms. See Scotti v. Tough Mudder Inc., 97 N.Y.S.3d 825, 833 (Sup. Ct. 2019). "A person is on inquiry notice if a 'reasonably prudent offeree would be on notice of the terms at issue.'" Id. (quoting Schnabel v. Trilegiant Corp., 697 F.3d 110, 120 (2d Cir. 2012)).

---

[9] To the extent a contract could be legally unconscionable based solely on procedural unconscionability, it is clear from the face of the complaint that this is not such an exceptional case. Hahn has pleaded some facts pointing to disparate bargaining power between him and JetBlue, and he might be able to produce more upon discovery. But courts interpreting New York law will not find procedural unconscionability where, although inequality in bargaining power is present, there is no evidence of "high pressure tactics that coerce [a signatory's] acceptance of onerous terms." Nayal, 620 F. Supp. 2d at 572 (alteration in original) (quoting Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002)). Here, Hahn "used the JetBlue web site, jetblue.com, to purchase an airline ticket to fly on JetBlue from Los Angeles LAX to San Francisco SFO." (Compl. ¶ 6.) His independent decision to purchase a ticket does not include a coercive tactic by JetBlue to force him to buy the ticket. Accordingly, this case is not so egregiously procedurally unconscionable as to undermine the general rule that procedural unconscionability alone is not enough to make a contract unenforceable.

14

Although Hahn points to external evidence that the Contract of Carriage was difficult to find, he does not claim that he could not find the Contract of Carriage or that he assented to no portion of the Contract of Carriage. (Cf. Compl. ¶ 29 ("Plaintiff and all other class members entered into valid and enforceable written contracts with JetBlue for air transportation.").) If Hahn were to claim he had no notice of the Contract of Carriage or of any of its terms, including the refund provision, then there would have been no meeting of the minds necessary to create a binding contract. See Metro. Enters. N.Y. v. Khan Enter. Constr., Inc., 1 N.Y.S.3d 328, 329 (App. Div. 2015). Hahn cannot sue for the breach of a contract he never entered. See, e.g., Albini Constr. Co. v. Montgomery Ward & Co., 294 N.Y.S.2d 109, 111 (App. Div. 1968) (per curiam) (finding that plaintiff could not sue on written contract where plaintiff had not signed contract or agreed to certain provisions).

Seemingly understanding the precariousness of suing for a breach of contract on a contract he argues he never assented to, Hahn insists that the Court can enforce a portion of a contract (the refund provision) severed from an unenforceable portion (the class action waiver). Although as a legal proposition that may be true, Hahn has failed to provide a reason that the class action waiver would be unenforceable that would not apply to the refund provision as well. As discussed above, the class action waiver is neither unenforceable nor unconscionable under New York law. And the majority of the cases Hahn relies on in arguing that he did not assent to the class action waiver discuss whether a party assented to an entire terms-and-conditions document, not to selective provisions.[10] See Berkson, 97 F. Supp. 3d at 403-05; Applebaum v. Lyft, Inc., 263 F. Supp. 3d 454, 466 (S.D.N.Y. 2017); Zachman v. Hudson Valley Fed. Credit Union, No. 20-cv-1579 (VB),

---

[10] I analyze here only the caselaw analyzing New York law, which the parties agree governs. Hahn cites other cases analyzing other jurisdictions' contract law. (See Opp'n 16 (citing Specht v. Netscape Comm'c'ns Corp., 306 F.3d 17 (2d Cir. 2002) (California law)).)

2021 WL 1092508, at *6 (S.D.N.Y. Mar. 22, 2021) (discussing notice of new amendment to agreement).

Hahn does not argue that he lacked actual and inquiry notice of the refund provision in the Contract of Carriage. The refund provision was no more conspicuous than the class action waiver. The refund provision is located on the seventh page of the Contract of Carriage. (See CoC § 4.a.2.c.) A user would have to scroll through the contract to see either provision. Moreover, although the class waiver provision is at the end of the Contract of Carriage, the refund provision is buried in the middle. If "a reasonably prudent offeree would be put on notice" that a provision affecting his rights was located on page seven of a long contract, Scotti, 97 N.Y.S.3d at 833, then there is no objective reason that he would lack notice of a provision later in the contract. A party's knowing decision to read only some of a contract does not permit the party to sign that contract without being bound by the portions he did not read. See Scott v. Bell Atl. Corp., 726 N.Y.S.2d 60, 64 (App. Div. 2001) ("[W]ith regard to the location or conspicuousness of the terms and conditions within the installation package, it has been held that such does not impair the enforcement of the agreement."), modified on other grounds by Goshen v. Mut. Life Ins. Co., 774 N.E.2d 1190 (N.Y. 2002); Brower v. Gateway 2000, Inc., 676 N.Y.S.2d 569, 573 (App. Div. 1998) ("That a consumer does not read the agreement or thereafter claims he or she failed to understand or appreciate some term therein does not invalidate the contract any more than such claim would undo a contract formed under other circumstances.").[11]

---

[11] The only case Hahn cites that discusses assent to certain terms and conditions but not to others is the Kings County Supreme Court's non-binding decision in Scotti v. Tough Mudder Inc. See Phila. Indem. Ins. Co. v. Indian Harbor Ins. Co., 434 F. Supp. 3d 4, 10 (E.D.N.Y. 2020) ("Decisions of a state's intermediate and lower courts are not binding on the federal courts."). In Scotti, the applicable contract "was contained in a box on the screen, which could be read by scrolling down in the text box," but only some of it was visible without scrolling. 97 N.Y.S.3d at 829. The initially visible portion of the contract did not include the arbitration clause at issue and did not otherwise make reference to such a clause lower down in the contract. Id. at 835. Based on the specific facts of the web design and the lack of evidence that the plaintiffs scrolled through the contract, the court found that the defendant had not borne its burden to show that the plaintiffs had reasonable notice of the arbitration clause. Id. at 834.

In summary, I do not find any of Hahn's attempts to avoid the Contract of Carriage's class action waiver persuasive. The waiver is neither unenforceable nor unconscionable, and if he did not assent to it, then he also did not assent to the contract that forms the basis of his claim. Accordingly, the waiver applies, and Hahn's class action claims must be dismissed.

## CONCLUSION

For the foregoing reasons, JetBlue's 12(b)(1) motion is DENIED, its 12(b)(6) motion is GRANTED, and Hahn's class action allegations are DISMISSED. This action survives as to Hahn's individual claim.

SO ORDERED.

Dated: August 19, 2022
Brooklyn, New York

/s/ Carol Bagley Amon
Carol Bagley Amon
United States District Judge

---

I do not find Scotti's holding persuasive. Caselaw from New York's intermediate courts, not cited in Scotti, makes clear that the location of a term within an agreed upon electronic agreement "does not impair the enforcement of the agreement." Scott, 726 N.Y.S.2d at 64; see also Brower, 676 N.Y.S.2d at 573. In any case, the facts here are distinguishable from those in Scotti. The Scotti court distinguished between provisions plaintiffs could see on the webpage without scrolling and those plaintiffs would have to scroll to see, but a consumer viewing the Contract of Carriage would have had to scroll to see either the refund provision or the class action waiver. Accordingly, Scotti's reasoning does not serve to distinguish between the admittedly enforceable refund provision and the challenged class action waiver.