| | |
|---|---|
| **SPENCER HAHN,**<br>**JAMES CRIST,** | 1:21-cv-06867 (NRM) (LB) |
| Plaintiffs, | **MEMORANDUM & ORDER** |
| v. | |
| **JETBLUE AIRWAYS**<br>**CORPORATION,** | |
| Defendant. | |

NINA R. MORRISON, United States District Judge:

Now before the Court is a motion filed by JetBlue Airways Corporation ("JetBlue" or "Defendant") to dismiss Plaintiffs' Second Amended Complaint ("SAC").

Plaintiffs Spencer Hahn ("Hahn" or "Plaintiff Hahn") and James Crist ("Plaintiff Crist" or "Crist") are two JetBlue customers who allege that JetBlue breached its contract under New York law by refusing to refund the Transportation Security Administration Fee ("TSA Fee") they paid to JetBlue in conjunction with their subsequently-cancelled airline tickets. Specifically, Plaintiffs allege that JetBlue's failure to refund the TSA Fee each traveler paid breaches a provision in JetBlue's contract of carriage (the "Contract of Carriage" or "CoC"), which obligates JetBlue to refund "taxes and fees" as "required by applicable law." Second Amended Complaint ("SAC"), ECF No. 42 at ¶ 22.[1] Plaintiffs further allege that JetBlue

---

[1] All page references use ECF pagination except where noted.

1

maintains a policy of failing to refund these unused TSA fees to customers with cancelled itineraries, even though, according to Plaintiffs, there is a federal regulation requiring a full refund of the TSA fee in those circumstances, and that JetBlue was familiar with and understood that regulation to be the "applicable law" in question when it drafted its Contract of Carriage. *Id.*

The lawsuit was originally filed as a class action on behalf of Plaintiff Hahn and others similarly situated in December 2021 and was originally assigned to the Hon. Carol Bagley Amon. In August 2022, Judge Amon granted Defendant's motion to strike the class action allegations in the complaint after finding that a class action waiver in the CoC was valid and enforceable. Memorandum and Order ("M&O"), ECF No. 20 at 17. However, the Court continued to exercise jurisdiction over Hahn's individual breach of contract claim, finding that "because at the time the case was brought to federal court the complaint 'appeared to plead in good faith the class claim necessary for jurisdiction, the fact that the court subsequently determined that the case could not proceed as a class action under [Class Action Fairness Act of 2005] CAFA did not deprive it of subject matter jurisdiction.'" *Id.* at 8 (quoting *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017)).

After this case was reassigned to the undersigned, the Court gave Plaintiff Hahn leave to amend the complaint to clarify certain aspects of the relief sought; it thereafter granted leave to amend to add a second plaintiff, Crist, who alleged that in 2023, he had separately been denied a refund of his TSA Fee despite identical language in JetBlue's contract of carriage that he, like Hahn, contended entitled him

to a refund of that fee. The Court also gave JetBlue leave to file successive motions to dismiss various iterations of the complaint under Rule 12 of the Federal Rules of Civil Procedure.

The SAC's prayer for relief is brought on behalf of both individual Plaintiffs (preserving its original class action allegations for appeal only). The SAC includes a request for actual damages; pre-judgment and post-judgment interest; an injunction barring JetBlue from withholding refunds of TSA fees when a passenger cancels or otherwise does not travel on a previously-purchased ticket; and a declaratory judgment stating that JetBlue's practice of failing to refund TSA fees in these circumstances is a breach of the airline's contract with its passengers. SAC at 13.

Defendant moves to dismiss under Rule 12(b)(1) on the following grounds: (1) the Court lacks original subject matter jurisdiction over Crist's claim under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d); (2) the Court should decline to exercise supplemental jurisdiction over Crist's cause of action; and (3) Plaintiffs lack standing to seek injunctive relief. Under Rule 12(b)(6), Defendant moves to dismiss on the following grounds: (1) Plaintiffs' breach of contract claims are preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1); (2) Plaintiffs' claim for injunctive relief fails because they have an adequate remedy at law; and (3) Plaintiffs' claim for declaratory relief is barred because it is duplicative of their breach of contract claim. Mot. to Dismiss SAC, ECF No. 47-1 at 9–10.

For the reasons stated below, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Specifically, the Court agrees with Defendant that

Plaintiffs are barred from seeking a declaratory judgment because it is duplicative of their underlying breach of contract claim. However, Plaintiffs have presented the Court with sufficiently plausible allegations regarding JetBlue's refund practices, the applicable Contract(s) of Carriage, the factual and procedural parallels between the two Plaintiffs' cases, Plaintiffs' likelihood of future injury, and the inadequacy of their remedies at law to defeat Defendant's motions to dismiss on all other grounds.

## I. Factual Background

Except as noted, the following facts are taken from the Second Amended Complaint and are presumed to be true for the purposes of JetBlue's motion. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013).

On August 3, 2021, Plaintiff Spencer Hahn, a resident of California, used the JetBlue website to purchase a one-way airline ticket from Los Angeles to San Francisco. SAC at ¶ 8. Hahn paid $58.40, an amount that included airfare, all taxes, and a TSA Fee.[2] *Id.* The TSA Fee is "used to pay the United States government's cost for providing Federal civil aviation security services." *Id.* ¶ 49.

The Contract of Carriage for the ticket Hahn purchased stated that "[t]axes and fees will not be refunded except when required by applicable law and, where permitted, only upon written request by Passenger." *Id.* ¶ 22.

On November 23, 2021, Hahn no longer wished to fly and cancelled his ticket through the JetBlue website's chat feature. *Id.* ¶ 9. Using this chat feature, Hahn

---

[2] The TSA fee, also known as the "September 11th Security Fee," is a fee imposed by the federal government for use of and to fund TSA. *Id.* at 4.

requested a refund of the $5.60 fee charged for the TSA Fee. *Id.* In the chat, a JetBlue customer service agent advised Plaintiff Hahn that they were unable to "separate the taxes from the fare" and could not refund any portion of Hahn's ticket and refused to issue a refund of the TSA fee. *Id.* ¶ 10.

Plaintiff Crist is a resident of Pennsylvania and joined the litigation against JetBlue in October 2023 after Court granted Hahn's motion for leave to amend the complaint to add Crist as a co-plaintiff. *Id.* ¶ 2; Oct. 27, 2023 Order.

Crist often books flights for himself and his wife through JetBlue and is a member of JetBlue's "TrueBlue" frequent flyer rewards program. SAC ¶¶ 11–12. On August 24, 2023, Crist purchased tickets for himself and his wife to fly from Pittsburgh, Pennsylvania to Boston, Massachusetts. *Id.* ¶ 14. Crist used his accrued rewards "miles" and credit card rewards to pay for the tickets, and also paid all applicable taxes and fees, including a $5.60 TSA Fee for each ticket. *Id.* On September 27, 2023, Crist cancelled his wife's ticket. *Id.* ¶ 15. JetBlue refunded the awards points to Crist's TrueBlue account. *Id.* The $5.60 TSA Fee, however, was credited to Crist's JetBlue "Travel Bank." *Id.*

The following day (September 28, 2023), Crist purchased a flight for himself from Boston, Massachusetts to Pittsburgh, Pennsylvania using his JetBlue awards miles. *Id.* ¶ 16. Crist attempted to use the $5.60 in his Travel Bank to cover the TSA fee for the new flight, but was unable to do so, and received a message on his computer screen that Travel Bank funds could not be used for award ticketing. *Id.* It is Crist's understanding that the funds in his Travel Bank can only be used towards the

purchase of a new cash ticket, but that JetBlue will not allow him to use those Travel Bank funds to cover fees incurred when he purchases a ticket using his TrueBlue awards points. *Id.*

On October 1, 2023, Crist asked JetBlue to refund the $5.60 to his credit card, but JetBlue refused. *Id.* ¶¶ 9-10, 17. The representative from JetBlue told Crist that the TSA Fee is not refundable. *Id.* The following day, Crist cancelled his ticket from Pittsburgh, Pennsylvania to Boston, Massachusetts, and again JetBlue refunded the award miles to his TrueBlue account but retained the $5.60 TSA Fee he paid on September 28, 2023, which it recorded as a credit in Crist's Travel Bank. *Id.* ¶ 18.

To date, JetBlue has not refunded the TSA Fees that Crist paid on his two tickets from Pittsburgh, Pennsylvania to Boston, Massachusetts. *Id.* ¶ 19. Crist asserts that given JetBlue's routes and rates, it is highly likely that he will continue to fly on JetBlue in the future. *Id.* ¶ 20. And both Plaintiffs assert that given the "limited marketplace for air travel, the predominance of JetBlue within the relevant markets, and [the Plaintiffs'] travel histories," there is a high likelihood that under JetBlue's current policies and practices, they will cancel a future JetBlue itinerary but will be unable to recover a full refund of the TSA fees that they claim is required by law. *Id.* ¶ 35

Plaintiffs' breach of contract claims turn on the identical language in each Plaintiff's CoC with JetBlue, in which the airline obligated itself to refund "taxes and fees" as "required by applicable law." *Id.* ¶ 22. Plaintiffs assert that it was well understood by JetBlue at the time it drafted this contract that the "applicable law"

governing refund of TSA fees for unused travel is found in a single federal regulation: 49 C.F.R. § 1510.9(b). *Id.* ¶ 25. That regulation states that "[a]ny changes by the passenger to the itinerary are subject to additional collection or refund of the security service fee … as appropriate." (emphasis in SAC). *Id.* Plaintiffs argue that together, the CoC and 49 C.F.R. § 1510.9(b) require JetBlue to promptly refund the TSA Fee in full when he or she cancels a ticket. *Id.*

The SAC also cites a 2006 report by the Office of the Inspector General of the United States Department of Homeland Security, which explained that, per 49 C.F.R. §§ 1510.9(b) and 1510.11, "air carriers have no grounds to keep fees of any kind that are owed to the ticket purchaser or TSA." *Id.* ¶ 26 (quoting Off. of Inspector Gen., Dep't of Homeland Sec., OIG-06-35, Rev. of the Transportation Sec. Admin. Collection of Sec. Serv. Fees (2006)). Similarly, the United States Government Accountability Office issued a report in 2010 stating that "consumers with unused nonrefundable tickets with expired or lost value are entitled to a full refund of the September 11th Security Fee [also known as the TSA Fee], but few consumers request a refund because airlines are not required to inform consumers of this." *Id.* ¶ 27 (quoting General Accountability Office, GACO-10-785, Consumers Could Benefit from Better Info. about Airline-Imposed Fees and Refundability of Gov't-Imposed Taxes and Fees (2010)). These federal government reports, Plaintiffs contend, support their allegation that JetBlue was fully aware of its obligations to refund travelers' unused TSA Fees — and knowingly bound itself to provide such refunds — when it drafted the applicable portion of the CoC.

## II.    Procedural History

Plaintiff Hahn brought suit against JetBlue for breach of contract under New York law on December 13, 2021.  Compl., ECF No. 1.  Hahn invoked this Court's jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), seeking monetary relief on behalf of an asserted class of "[a]ll passengers who booked travel with JetBlue and paid JetBlue a TSA Passenger Fee, and who canceled such travel, within the past 6 years."  *Id.* ¶ 19.

On December 30, 2021, two weeks after Hahn filed suit, JetBlue unilaterally issued a $5.60 credit to his credit card, without Hahn's consent or prior knowledge.  SAC ¶ 30.  Hahn had no way to decline this credit.  *Id.*

On January 31, 2022, Defendant JetBlue moved for a pre-motion conference in anticipation of filing a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6).  Jan. 2022 PMC Letter, ECF No. 10.  In its pre-motion conference letter, JetBlue asserted that Hahn's claim should be dismissed for the following reasons: Hahn no longer had standing to pursue his breach of contract action because JetBlue's post-lawsuit refund of Hahn's TSA Fee mooted Hahn's claim for monetary damages; the class action waiver within JetBlue's Contract of Carriage precluded the class action lawsuit; and even if the Court were to find the waiver unenforceable, Hahn could no longer represent the putative class given that he received his refund.  *Id.* at 2–3.

On March 4, 2022, Judge Amon held pre-motion conference on Defendant's

anticipated motion to dismiss. Mar. 4, 2022 Minute Entry; Mar. 4, 2022 Conf. Tr., ECF No. 21. After hearing the parties' positions and confirming the various forms of monetary, declaratory, and injunctive relief that Hahn was seeking, Judge Amon set a briefing schedule for Defendant's anticipated motion to dismiss. *Id.* On June 3, 2022, the parties filed their fully briefed motion to dismiss. Mot. to Dismiss Compl., ECF No. 16; Pls.' Opp'n to Mot. to Dismiss Compl., ECF No. 17. On July 19, 2022, Judge Amon held oral argument on Defendant's motion to dismiss. *Id.* Defendant did not raise a claim that Plaintiffs' action is preempted by the ADA in any of its filings or conferences before Judge Amon.

In an Order dated August 25, 2022, Judge Amon granted Defendant's 12(b)(6) motion and dismissed Plaintiff Hahn's class action allegations, finding that JetBlue's class action waiver was enforceable. M&O at 17. However, Judge Amon denied the motion to dismiss under Rule 12(b)(1), finding that the Court continued to have jurisdiction over Hahn's individual breach of contract claim, since his complaint had pled, in good faith, facts sufficient to establish CAFA jurisdiction. *Id.* at 8 (citing *F5 Capital v. Pappas*, 856 F.3d 61 (2d Cir. 2017)). Judge Amon also concluded that despite the fact that JetBlue had refunded Hahn's TSA fee after he filed suit, Hahn's claim for prejudgment interest had not been satisfied, and therefore, the case was not moot. *Id.* at 6–7.

On September 7, 2022, JetBlue filed its answer, asserting the following affirmative defenses: (1) the cited provisions of Code of Federal Regulations, as applicable to the circumstances alleged in the complaint, do not require the refund of

the TSA Fee at issue in this action; (2) the Contract of Carriage does not require the refund of the TSA fee at issue; and (3) Plaintiff cannot enforce the Contract of Carriage between Plaintiff and JetBlue, or the specific terms thereof, due to Plaintiff's own conduct. Def.'s Answer, ECF No. 23.

The case was reassigned to the undersigned on October 28, 2022. On December 6, 2022, JetBlue filed a letter seeking a pre-motion conference on its anticipated motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) on Plaintiff Hahn's claims for injunctive relief and attorneys' fees.[3] *See* Dec. 2022 PMC Letter, ECF No. 30. Defendant argued that Plaintiff had "no basis" to recover attorneys' fees given that the case was no longer proceeding under CAFA, and the operative agreement between the parties was the CoC, which did not provide for the recovery of attorneys' fees. *Id.* at 2. Defendant further argued that Plaintiff Hahn had no standing to seek injunctive relief as he faced no impending or prospective harm and had an adequate remedy at law. *Id.*

This Court held a pre-motion conference on January 17, 2023. During this pre-motion conference, Plaintiff argued that Defendant had waived its right to bring the pending motion Rule 12(c) motion by failing to raise these claims before Judge Amon in Defendant's earlier motion to dismiss filed under Fed. R. of Civ. P. 12(b)(6);

---

[3] In this pre-motion conference letter motion, JetBlue also requested a stay of discovery while the motion was pending in order to conserve the parties' time and resources, as well as judicial time and resources. JetBlue argued that the Rule 12(c) motion would likely be dispositive of the entire action, and under such circumstance, a stay of discovery while the motion is pending would be appropriate. Dec. 2022 PMC Letter, ECF No. 30 at 2.

Plaintiff further argued that this constituted grounds for waiver not only because the complaint included a prayer for injunctive and declaratory relief, but also because Judge Amon confirmed with the parties on the record at the earlier March 4, 2022 pre-motion conference that Hahn was, in fact, seeking injunctive and declaratory relief. Tr., Jan. 2023 PMC, ECF No. 48-3. Ultimately, however, the Court concluded that Defendant could proceed with its challenge to Plaintiff's bid for injunctive and declaratory relief under Rule 12(c), notwithstanding its failure to do raise that claim in earlier Rule 12(b) motion practice before Judge Amon. *Id.*; Jan. 18, 2023 Minute Entry. The Court also denied, without prejudice, Defendant's motion to stay discovery during the pendency of Defendant's Rule 12(c) motion; set a deadline for Plaintiff Hahn to file his amended complaint for the purpose of pleading additional facts relating to and clarifying the scope of its claims for declaratory and injunctive relief; and set a deadline for the parties to brief Defendant's motion. January 18, 2023 Minute Entry.

Plaintiff filed a First Amended Complaint ("FAC") on January 31, 2023, and on February 14, 2023, the parties filed the fully briefed motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). FAC, ECF No. 35; Mot. to Dismiss FAC, ECF No. 36; Pl.'s Opp'n to Mot. to Dismiss FAC, ECF No. 39. On October 13, 2023, Hahn filed a letter for a pre-motion conference regarding his anticipated motion for leave to file a second amended complaint to add Plaintiff Crist pursuant to Fed. R. Civ. P.

15 and 20.[4]  Oct. 2023 PMC Letter, ECF No. 41.  The Court granted leave to amend

on October 18, 2023, and Plaintiff filed the SAC adding Plaintiff Crist on October 19,

2023.  SAC.  On October 24, 2023, Defendant filed a letter noting, for the record, its

opposition to the Court's grant of leave to amend and informed the Court that it would

submit a separate letter request for a pre-motion conference with respect to an

anticipated motion to dismiss the SAC.  Def's Opp'n to Minute Entry, ECF No. 43.

On October 27, 2023, the Court waived its pre-motion conference requirement and

directed the parties to confer and propose a briefing schedule for Defendant's

anticipated motion to dismiss the SAC.  Oct. 27, 2023 Order.

The parties filed Defendant's fully briefed motion to dismiss on January 10,

2024.  *See* Mot. to Dismiss SAC, ECF No. 47-1; Pls.' Opp'n to Mot. to Dismiss SAC,

ECF No. 48; and Def. Reply to Mot. to Dismiss SAC, ECF No. 49.  In its motion,

Defendant argued, for the first time, that the entire breach of contract action was

preempted by the Airline Deregulation Act ("ADA").  Mot. to Dismiss SAC at 22–29.

The Court held oral argument on the motion to dismiss May 13, 2024.  At

argument, the Court asked defense counsel why – if the ADA so clearly preempted

the entire breach of contract action as counsel claimed – JetBlue had not raised that

ground for dismissal earlier in this litigation, *i.e.,* it was not raised in any of the letter

motions, pleadings, conferences, or Rule 12 motions in proceedings before any of the

various District or Magistrate Judges before whom the parties had appeared since

---

[4]  In the alternative, Plaintiff Hahn requested that the Court permit Crist to
intervene pursuant to Fed. R. Civ. P. 24.  *See* Oct. 2023 PMC Letter at 4–5.

2022.  Having *sua sponte* raised the issue of potential waiver of JetBlue's ADA preemption claim, the Court granted leave for the parties to file supplemental letter briefs on the question of whether Defendant's ADA preemption claim could be and/or had been waived.  The Court also permitted the parties to include supplemental authorities on the substantive claim of ADA preemption, if any, that had been decided since the parties filed their memoranda of law.  May 13, 2024 Oral Arg. Tr.; May 14, 2024 Minute Entry.

On May 20, 2024, the parties filed supplemental letter briefs addressing the Court's May 14, 2024 minute entry requesting supplemental briefing.  Def. Rule 12 Supp. Br., ECF No. 50; and Pl. Rule 12 Supp. Br., ECF No. 51.  Upon the Court's review of the parties' supplemental letter briefs, which focused on waiver under Fed. R. Civ. P. 12, the Court directed parties to file additional supplemental letter briefs on June 7, 2024 addressing whether Defendant's claim as to ADA preemption constitutes an unpled affirmative defense under Fed. R. Civ. P. 8(c); if so, whether ADA preemption is a waivable defense under Rule 8(c); and even if waived, whether this Court should nonetheless exercise its discretion to consider JetBlue's preemption defense on the merits.  Jun. 7, 2024 Minute Entry; *see also* Def. Rule 8 Supp. Br., ECF No. 53; Def. Rule 8 Supp. Br., ECF No. 54.

## III.    Legal Standard

### A. Dismissal for Want of Jurisdiction Under Fed. R. Civ.  P. 12(b)(1)

"A district court properly dismisses an action under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' . . . ."  *Cortlandt St. Recovery*

*Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action. If the court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010).

A lack of subject matter jurisdiction "is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) (citations omitted). The burden is on the plaintiff asserting jurisdiction to prove by a preponderance of the evidence that jurisdiction is proper. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

**B. Dismissal Under Rule 12(b)(6)**

Fed. R. of Civ. P. 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must be dismissed where, as a matter of law, "the

allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, in deciding this motion, this Court must "assess the legal feasibility of the complaint, not ... assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (internal citation and quotation marks omitted). In so doing, the Court must "accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (citation and internal quotation marks omitted).

## IV. Discussion

### A. Whether the Court Has Jurisdiction Over Plaintiff Crist's Claims

The role of CAFA as the anchor of federal jurisdiction in this case raises two questions following the permissive joinder of Plaintiff Crist: (1) whether, now that the class action allegations in Hahn's complaint have been dismissed, the Court can exercise subject matter jurisdiction over Plaintiff Crist's breach of contract claims under CAFA (as the Court continues to do with respect to Plaintiff Hahn), and/or (2) whether, irrespective of CAFA jurisdiction, the Court should exercise supplemental jurisdiction over Plaintiff Crist's claim under 28 U.S.C. § 1367.

Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff Crist's claim for two reasons. First, Defendant argues that the history and current posture of this action precludes Crist from invoking jurisdiction under CAFA.

Mot. to Dismiss SAC at 14–15. Unlike Hahn — who asserted what Judge Amon later agreed were good-faith allegations that jurisdiction under CAFA was proper at the time of filing — Crist joined the action only *after* Judge Amon concluded that JetBlue's class action waiver was enforceable and dismissed the class action allegations from Hahn's complaint. *Id.*; M&O at 17. Thus, Defendant argues, Crist (unlike Hahn) cannot credibly assert jurisdiction under CAFA because that issue had already been decided adversely to Plaintiffs at the time Crist joined the case. Mot. to Dismiss SAC at 14–15. Defendant further asserts that in any event, Crist is outside the class as defined in the original complaint filed in December 2021 — which sought damages on behalf of "[a]ll passengers who booked travel with JetBlue and paid JetBlue a TSA Passenger Fee, and who canceled such travel, within the past 6 years" — since Crist's dispute with JetBlue over his unrefunded TSA fees did not arise until 2023. Compl. ¶ 19; SAC ¶ 39; Mot. to Dismiss SAC at 16. Plaintiffs counter that the class-action claims are included in the SAC and preserved for their prospective, good faith appeal of Judge Amon's ruling as to the enforceability of the waiver provision in Hahn's contract; they argue that pending final resolution of the class-action waiver issue, CAFA jurisdiction is just as appropriate for Crist as it is for Hahn. Pls.' Opp'n to Mot. to Dismiss SAC at 17.

Second, Defendant argues that the Court should decline to exercise supplemental jurisdiction over Crist's claims under 28 U.S.C. § 1367(a) because, it contends, Crist's claims are not sufficiently related to Hahn's as to form the same case or controversy; the sole original ground for subject matter jurisdiction (*i.e.,* the

complaint's class action allegation) has been dismissed, leaving only state law claims remaining; and considerations of judicial economy, convenience, and fairness to the litigants weigh against the exercise of supplemental jurisdiction. Mot. to Dismiss SAC, at 16–19. Plaintiffs counter that supplemental jurisdiction is appropriate under 28 U.S.C. § 1367(a) and would serve the interests of judicial economy. Pls'. Opp'n to Mot. to Dismiss SAC, at 15–17. They argue that Crist's claims form "part of the same case or controversy" as Hahn's claims, in that both Plaintiffs allege "that JetBlue violated the exact same contractual provision in the exact same way" — by failing to refund their $5.60 TSA fee when each Plaintiff changed their travel plans — and because both Plaintiffs seek the same relief. *Id.* at 16.

For the reasons discussed below, given the close similarities between both Plaintiffs' breach of contract actions, JetBlue's asserted legal defenses as to both Plaintiffs, and the procedural history and current posture of this litigation, it is appropriate for this Court to exercise supplemental jurisdiction over Crist's state law claim under 28 U.S.C. § 1367. Accordingly, the Court need not (and does not) decide whether Crist has independent grounds for subject matter jurisdiction under CAFA.

### 1. 28 U.S.C. § 1367(a): Whether Crist's Claim is Sufficiently Related to Hahn's

Under 28 U.S.C. § 1367, the Court may confer supplemental jurisdiction over claims by Rule 20 and Rule 23 plaintiffs in certain circumstances. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 560 (2005). In general, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in

the action ... that they form part of the same case or controversy under Article III."
28 U.S.C. § 1367(a); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725
(1966); *see also Schiffman v. Epstein*, No. 04 Civ. 2661, 2009 U.S. Dist. LEXIS
133434, at *11 (S.D.N.Y. May 14, 2009) ("The federal courts have supplemental
jurisdiction to hear state law claims under 28 U.S.C. § 1367 when the state law
claims share a commonality with claims that are properly before the federal court
pursuant to one of its grants of original subject matter jurisdiction, *i.e.*, federal
question jurisdiction or diversity jurisdiction.").

Claims "form part of the same case or controversy" when they "derive from a
common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522
U.S. 156, 165 (1997) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S.
715, 725 (1966)). Claims derive from a common nucleus of operative fact when the
facts underlying the claims "substantially overlap[ ]." *Achtman v. Kirby, McInerney
& Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank &
Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

As a threshold matter, the Court finds that Crist's claim is sufficiently
related to Hahn's claim as to form the same case or controversy, such that
supplemental jurisdiction is proper. Similar to Hahn, Crist alleges that JetBlue
breached its contract when it refused to refund the TSA Fee to the original form of
payment in violation of federal regulation. Crist's claim involves the same air-
carrier defendant; alleged violations of an identical contract provision (even though
the dates on the CoC differ), which Plaintiffs both assert incorporates the same

specific federal regulation by reference; and similar course of conduct (failing to refund each Plaintiff's $5.60 TSA Fee upon request after a ticket cancellation). These facts are more than sufficient to permit the Court to exercise supplemental jurisdiction over Crist's claim. *Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc.*, 891 F.3d 256, 258 (7th Cir. 2018) ("[S]upplemental jurisdiction is appropriate when the supplemental claim involves the same parties, contracts, and course of action as the claim conferring federal jurisdiction.") (collecting cases).

JetBlue's assertion that Crist's claims are not part of the same "case or controversy" rests on relatively minor distinctions between the two Plaintiffs and their interactions with JetBlue that pale in comparison to the similarities in the Plaintiffs' central factual and legal allegations. JetBlue highlights the facts that Crist's breach of contract claim is premised on a different underlying CoC (*i.e.*, the updated version JetBlue adopted on August 4, 2023); that Crist was not within the defined class alleged in Hahn's original complaint; and that Crist purchased his tickets with reward points whereas Hahn purchased his on a credit card, and the "refunds" JetBlue ultimately provided to each one also differed. Mot. to Dismiss SAC at 17. The Court finds these distinctions unpersuasive in light of the parties' broader legal dispute. While Hahn did not receive a refund at all until after he filed suit, and Crist received the cost of the TSA Fee back as Travel Bank credit, neither Plaintiff received what they assert was the legally required remedy: a full TSA Fee refund to their original form of payment, with no restrictions on how those funds might be used by them in the future. Further, JetBlue has not — neither in its briefs nor during

oral argument — identified *any* differences between provision 4.a.2.b.of the 2021 and 2023 versions of JetBlue's CoC, such that Crist's claim for breach of contract is derived from substantively different contractual obligations. Since the relevant provisions of the CoC at issue in Plaintiffs' breach claim are identical, simply noting the year the CoC was issued — without any changes to the applicable provisions of the contract — is insufficient to prove that Crist's and Hahn's claims arose from a different nucleus of operative fact and/or form a different case or controversy.

It is true that other courts have, at times, declined to find supplemental jurisdiction when the claims against the same defendant relate to different contracts. But unlike here, the contracts in those cases each contained substantive differences in their relevant terms, such that there was not a sufficient level of commonality between the contracts to support the exercise supplemental jurisdiction. *See, e.g.,* *Panam Mgmt. Grp., Inc. v. Pena*, 2010 WL 3708656, at *5 (E.D.N.Y. Sept. 14, 2010) (declining to exercise jurisdiction over state-law claims where the state-law claims involved "25 different investors," and the federal claim involved only a single contract, and where, although all of the claims involved breach of contract, they related to different contracts); *Prolite Bldg. Supply*, 891 F.3d at 258 (declining to exercise supplemental jurisdiction over a warranty claim in a breach-of-contract suit regarding service agreements, because of the lack of commonality and overlap between the agreements). The Court has no difficulty concluding that Crist's breach of contract claim is sufficiently related to Hahn's as to "form part of the same case or controversy" under 28 U.S.C. § 1367(a).

### 2. 28 U.S.C. § 1367(c) Factors and Relevant Additional Considerations

While 28 U.S.C. § 1367(a) provides the Court with broad discretion to exercise supplemental jurisdiction over related claims, § 1367(c) provides specific exceptions that limit the Court's discretion to do so in certain circumstances. *Allapattah*, 545 U.S. at 559. After finding that § 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (emphasis in original) (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)). Under 28 U.S.C. § 1367(c), the court "may decline to exercise supplemental jurisdiction" if (1) "the claim raises a novel or complex issue of State law;" (2) the state law claim "substantially predominates" over federal claims; (3) the court has "dismissed all claims over which it has original jurisdiction;" or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

The Second Circuit has found that § 1367(c) "is permissive rather than mandatory." *See Pension Ben. Guar. Corp.*, 712 F.3d at 726 (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)). Thus, even if one or more scenarios from § 1367(c) is present, a court may exercise supplemental jurisdiction if balancing the traditional principles of "judicial economy, convenience, fairness, and comity" weigh in favor of exercising supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994).

These principles weigh in favor of finding supplemental jurisdiction over Crist's claim. On the one hand, it is true that both Hahn and Crist are bringing state law breach of contract claims and the class action that conferred subject matter jurisdiction has been dismissed; thus, the factors in § 1367(c)(2) and (3) would provide grounds for this Court to decline to exercise supplemental jurisdiction. *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Cohill*, 484 U.S. at 350 n.7); *see also Cohill*, 484 U.S. at 351 ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."); *Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.") (footnote omitted); *Town of Babylon, NY v. James*, 2023 WL 8734201, at *10 (E.D.N.Y. 2023).

However, principles of judicial economy, convenience, and fairness weigh heavily in favor of exercising supplemental jurisdiction here. That is so given that both Plaintiffs' claims rise or fall on the same legal contention: that JetBlue breached a self-imposed, contractual obligation on the airline's part to follow the mandate of 49 C.F.R. § 1510.9(b) and refund their unused TSA Fees in full. Whether or not that claim ultimately has merit, it would be highly inefficient to require Crist to proceed with a separate action in state court while Hahn's essentially identical claim is litigated in this Court. There is substantial overlap between the discovery needed for Hahn's and Crist's claims, and there are numerous (and, in some respects, complex) and common legal issues presented in the numerous Rule 12 motions filed by JetBlue

to date as well as, in all likelihood, still more to come given the parties' litigation history thus far and the nature of their dispute. It would be highly inefficient to have those issues (as well as related claims of waiver and *res judicata*) proceed in a parallel case litigated against JetBlue by Crist in state court when this Court is already presiding over Hahn's case.

Retaining supplemental jurisdiction over Crist's claims will also allow the parties to resolve their dispute over whether JetBlue's class action waiver is enforceable in this litigation (either by agreeing to be bound by Judge Amon's resolution of that issue in JetBlue's favor as the case proceeds, or by presenting it to the Second Circuit on appeal), rather than presenting it anew to the New York State courts. Similarly, as discussed *infra*, JetBlue raised a new and substantial federal preemption defense to both Plaintiffs' state law claims only recently, more than two years into this litigation. It would be inefficient to have that issue resolved in both federal and state courts when the grounds for JetBlue's assertion of that defense are identical as to both Plaintiffs. Further, as Defendant noted during oral argument, even though Hahn's action has been pending since December 2021, the parties are in the early stages of discovery — no depositions have been taken and limited additional discovery has been exchanged — such that adding Crist at this stage of the litigation will likely have minimal impact on discovery or trial timelines. May 13, 2024 Oral Arg. Tr. at 27. Nor has Defendant identified any grounds on which it would be prejudiced (much less unfairly so) by Crist's joinder.

Thus, for the reasons stated above, the Court will exercise supplemental

jurisdiction over Crist's claim under 28 U.S.C. § 1367.

**B. Plaintiffs' Claim for Injunctive Relief**

Defendant also moves to dismiss Plaintiffs' claim for injunctive relief, arguing that this claim fails as a matter of law as (1) Plaintiffs do not have standing to seek an injunction because they have not alleged a substantial risk of future injury from JetBlue's practices, and (2) even if they prevail on their breach of contract claims, Plaintiffs have an adequate remedy at law. Motion to Dismiss SAC at 20–22, 29–30.

**1. Potential Waiver of Defendant's Motion**

As a preliminary matter, Plaintiffs argue that under Fed. R. Civ. P. 12(g)(2), Defendant has waived the right to move to dismiss Plaintiff's claim for injunctive and declaratory relief under Fed. R. Civ. P. 12(b)(6), because these arguments were available but not raised in Defendant's initial Rule 12(b)(6) motion filed before Judge Amon in June 2022. Mot. to Dismiss Compl.

This potential waiver issue first arose at this Court's first pre-motion conference with the parties in January 2023. At that time, Defendant sought leave to strike Plaintiff Hahn's claim for injunctive relief and attorneys' fees in a motion for judgment on the pleadings under Rule 12(c). *See* Dec. 2022 PMC Letter at 2. After Plaintiff argued that this claim had been waived because it could and should have been before Judge Amon, this Court granted Defendant leave to file its motion under Rule 12(c) – thus avoiding the need to decide whether Defendants should be permitted to file a successive Rule 12(b) motion. Jan. 18, 2023 Minute Entry and Order. The Court also granted Plaintiff Hahn leave to amend his complaint to plead additional facts and clarify the scope of his claims for declaratory and injunctive relief. *Id.*

For reasons that remain unclear, however, rather than file its motion challenging Plaintiffs' claim for injunctive and declaratory relief under Rule 12(c) as the Court had expressly given it leave to do, Defendant instead filed its motion under Rule 12(b)(1) and (b)(6) – thus raising, yet again, the issue of whether the motion should be barred as successive. (And it did so twice – once in response to the FAC, and once in response to the present, operative SAC.) It may be that Defendant chose to do so because it has not yet answered the SAC, or because it has not yet filed a Rule 12(b) motion with respect to Plaintiff Crist; it also may be that Defendant was simply careless in captioning its motion.

Under a strict interpretation of the Federal Rules, Plaintiffs have a strong waiver argument. Fed. R. Civ. P. 12(g)(2) provides that "[e]xcept as provided in Rule 12(h)(2) or (h)(3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The exceptions in the Rule under 12(h)(2) (exception for 12(b) defenses raised in a Defendant's answer, at summary judgment, or at trial) and under 12(h)(3) (exception for any jurisdictional objection under 12(b)(1)) are inapplicable here. Instead, Rule 12(g)(2) is understood to "bar successive 12(b)(6) motions containing arguments that could have been raised in earlier motions." *Polidora v. Dagostino & Assocs.*, 2021 WL 4482273, at *1 n.1 (S.D.N.Y. 2021) (citing *Bates v. Bristol-Myers Squibb Co.*, 2017 WL 5952903, at *2 (S.D.N.Y. 2017); *Easton Rae, LLC v. Violet Grey, Inc.*, No. 21-CV-6234 (JPO), 2023 WL 2691459, at *3 (S.D.N.Y. 2023).

The caselaw Defendant cites does not support Defendant's assertion that it can raise previously available arguments in a successive 12(b)(6) motion. Def. Rule 12 Supp. Br., ECF No. 50 at 1–2. While Defendant argues in its supplemental briefing that "[f]ailure to state a claim upon which relief can be granted under Rule 12(b)(6) can be raised at any time, including at trial," Defendant incorrectly focuses on the waiver principle in Rule 12(h) instead of Rule 12(g)(2)'s limitation on *successive* Rule 12(b)(6) motions. *Id.* at 1. Defendant also cites *Walker v. Schult*, 45 F.4th 598, 615 (2d Cir. 2022), but this case concerns the affirmative defenses that are waived if not asserted in Defendant's answer pursuant to Rule 8(c). *Id.* While *Walker* does state that Rule 12(b)(6) defenses may be raised at trial or at the close of pleadings, it does not discuss a Defendant's ability to assert *previously available claims or defenses* in successive Rule 12(b)(6) motions pursuant to 12(g)(2). Defendant also relies on *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123 (2d Cir. 2001), which focuses on whether a Rule 12(b)(6) motion is timely if filed after the close of pleadings. *Id.*

Defendant has not presented any caselaw that rebuts Rule 12(g)(2)'s clear bar on successive motions asserting previously available defenses, and it is clear that Defendant had grounds to move to dismiss Hahn's claim for injunctive relief at the time of its first Rule 12(b)(6) motion. JetBlue was on notice regarding Plaintiffs' claims for injunctive relief, which were pled in the initial complaint and discussed in conferences prior to Defendant filing its first motion to dismiss on June 3, 2022. In the initial complaint, Plaintiffs requested "[a]n order enjoining Defendant from

withholding refunds of TSA Fees," which is a clear claim for injunctive relief.[5]  Compl. at 9.  While defense counsel did express some confusion regarding Plaintiff Hahn's requested relief during the March 4, 2022, pre-motion conference,[6] Judge Amon and Plaintiff's counsel clarified on the record that Plaintiff Hahn was seeking injunctive relief, such that the defense counsel could have raised defenses against the Plaintiff's claims for injunctive relief in its subsequent Motion to Dismiss filed on June 3, 2022.[7] Mot. to Dismiss Compl.  Defendant cannot claim that its current motion stems from new facts or grounds for relief (except with respect to Crist) that were not available when it moved to dismiss the original complaint.

Nevertheless, in January 2023, this Court did grant Defendant leave to proceed with its challenge to Hahn's claim for injunctive relief in a motion filed under Rule 12(c).  Jan. 18, 2023 Order.  After Plaintiff twice amended the complaint, Defendant filed its motion under Rule 12(b)(1) and (6).  Mot. to Dismiss SAC.  This required the Court and Plaintiffs to expend additional resources addressing potential waiver issues arising from Defendant's successive Rule 12(b) motions.  But

_____

[5]  While the Plaintiff's request for injunctive relief is expanded in the SAC—which asks the Court to enjoin the practice of withholding funds *and* to compel JetBlue to refund the fee—JetBlue could have categorically challenged Hahn's entitlement to injunctive relief in its initial motion to dismiss.  Compl.; SAC, ECF No. 42.

[6]  In the March 4, 2023, pre-motion conference, the defense counsel stated "[t]here is no equitable relief or declaratory relief that's pled," but Judge Amon had the Plaintiff's counsel clarify that they were seeking an injunction.  March 4, 2022 Conf. Tr. at 8.

[7]  During the March 4, 2024 conference, Plaintiff's counsel noted that they did not have "a separate cause of action for [declaratory relief]" but were "seek[ing] an order enjoining Defendant from withholding these fees." *Id.*

ultimately, finding its arguments to be waived would unduly elevate form over substance. For example, Defendant could (in light of this Court's earlier order) re-file its motion under Rule 12(c) after it answers the SAC. Thus, since the issue has been fully briefed, the Court will construe this portion of Defendant's motion as a motion for judgment on the pleadings under Rule 12(c) and consider its merits.

### 2. Sufficiency of Plaintiffs' Claim for Injunctive Relief

Standing, as required by Article III, requires a plaintiff to show (1) an "injury in fact," (2) a "causal connection" between that injury and the conduct at issue, and (3) a likelihood "that the injury will be redressed by a favorable decision." *Maddox v. Bank of New York Mellon Trust Company, N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements, and must clearly allege facts demonstrating each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (internal citations omitted).

For each form of relief sought, a plaintiff "must demonstrate standing separately." *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 239 (2d Cir. 2016), citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). In order to obtain injunctive relief, Plaintiffs must demonstrate: (1) that they have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiffs and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-157 (2010) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

### a. Sufficient Likelihood of Future Injury

To satisfy Article III's "injury in fact" requirement, the harm cited by a plaintiff "must be actual or imminent, not speculative — meaning that the injury must have already occurred or be likely to occur soon. And when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Food & Drug Admin. v. All. for Hippocratic Med.*, No. 23-235, 2024 WL 2964140, at *6 (U.S. June 13, 2024) (citing *Clapper v. Amnesty Int'l* USA, 568 U.S. 398, 409 (2013)). *See also Nicosia v. Amazon.com, Inc.*, 834 F.3d at 239 (to have standing to seek injunctive relief, a plaintiff must show a "real or immediate threat of injury") (internal quotation marks omitted).

Here, there is no dispute that Plaintiffs have adequately pled a past injury from JetBlue's challenged practices; and as Judge Amon found, their individual claims for monetary damages they seek to recover from their unrefunded TSA fees (or, in Hahn's case, prejudgment interest) are not moot. M&O at 20. What the parties currently dispute is whether Plaintiffs have shown a sufficient threat of *future* injury from JetBlue's practices that would also give them standing to seek an injunction. Mot. to Dismiss SAC at 20–22. Specifically, Defendant argues that Plaintiffs' sole claim — breach of contract for JetBlue's failure to refund the unused TSA Fee — is premised solely upon past conduct, and not any prospective future injury. *Id.* It argues that Plaintiffs' claim hinge upon the conjectural and hypothetical proposition

that Plaintiffs *may* purchase a ticket in the future from JetBlue, and that they *may* cancel their itinerary and fail to receive a refund of their TSA fees. *Id* at 21–22.

Plaintiffs counter that they have adequately pled a substantial risk of future harm because they have purchased and will continue to purchase JetBlue tickets in the regions where they live and work, and there is a "high probability" that they will purchase a JetBlue plane ticket in the future. Pls.' Opp'n. to Mot. to Dismiss SAC at 19-22. Plaintiffs also argue that the risk of future breaches of contract by JetBlue is not speculative, because JetBlue maintains a policy and practice of not refunding travelers' TSA fees when a traveler cancels his or her ticket, and JetBlue has stated in these proceedings that it has no intent to change this practice. *Id*. at 20.

Courts have assessed whether a plaintiff has adequately pled that he or she faces a substantial risk of future, immediate harm sufficient to seek injunctive relief through the factors outlined in *City of Los Angeles v. Lyons*, 461 US 95 (1983): (1) whether the challenged practice was an endorsed policy; (2) the widespread and routine nature of the defendants' behavior; (3) whether the plaintiffs have shown that they are more likely than simply "any other citizen" to be subjected to the challenged behavior; and (4) whether the risk of experiencing recurring harm depends on their engaging in unlawful activity. *Id*.

The Court finds that the *Lyons* factors weigh in Plaintiffs' favor here. Plaintiffs' case has some notable parallels to *Amadei v. Nielsen*, 348 F. Supp. 3d 145 (E.D.N.Y. 2018), in which the Court applied *Lyons* to deny a motion to dismiss the plaintiffs' claim for injunctive relief. The *Amadei* plaintiffs were air travelers flying

on a domestic flight from San Francisco International Airport to New York's John F. Kennedy International Airport ("JFK"); upon arrival at JFK, the plaintiffs, along with all other passengers on board the airplane, were required to show government-issued identification documents to United States Customs and Border Protection ("CBP") as they deplaned, even though CBP had no warrant nor individualized reasonable suspicion justifying the search. *Id.* at 151. The plaintiffs filed suit, challenging the lawfulness of the search and what CBP officials cited as the longstanding "policy" pursuant to which it was conducted. *Id.* at 151–52. They sought injunctive relief to halt CBP's practices going forward, alleging that they had standing to do so because they faced a sufficient likelihood of experiencing another search by the by CBP, given that the search was conducted pursuant to a formal policy/practice and plaintiffs were frequent domestic airline travelers. *Id.* at 161.

Defendants moved to dismiss, arguing that the *Amadei* plaintiffs had not shown a sufficient likelihood of future injury because they had no "definitive plans to take a domestic flight in the future" and "have only been subjected to a search [under the challenged practice] once before." *Id.* at 157. The Court disagreed. While the *Amadei* plaintiffs were only subjected to one search, Judge Garaufis found that "Plaintiffs' frequent domestic airline travel, in conjunction with Defendants' admitting to frequently conducting searches at the airport, establishes that plaintiffs face a particularized risk of experiencing another search during one of their future domestic flights." *Id.* at 161.

That reasoning holds true in the instant case. Affording Plaintiffs the benefit of all reasonable inferences from the SAC and the exhibits and references that both parties have included in their moving papers, the Court finds that, like the air travelers in *Amadei,* Plaintiffs have sufficiently alleged a substantial risk of future, immediate harm to satisfy the *Lyons* factors.

First, the Court finds that JetBlue's practice of not refunding the TSA fee for cancelled tickets is likely a widespread company policy. More specifically, the Second Circuit has found that alleging that the challenged action was conducted pursuant to "endorsed policies" creates a "likelihood of recurring injury," such that a plaintiff who has been injured by a practice once before may have standing to seek prospective relief. *See Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 345 (2d Cir. 1998) (finding that the plaintiff, who sought prospective relief from an NYPD interrogation practice and had been the subject of one prior interrogation, proved a likelihood of recurring injury where the challenged interrogation practice was conducted pursuant to a formal policy and the defendants planned to continue employing the practice). Here, Plaintiffs allege that "counsel for JetBlue acknowledged that it is not JetBlue's policy to return the TSA fee when a flight is cancelled, and that JetBlue will not change its practices." SAC ¶ 32. The Court finds Plaintiffs' assertions regarding JetBlue's policy to be plausible given that JetBlue has confirmed several times on the record that it has no plans to change its practice of not refunding the TSA fee when passengers cancel travel under a certain dollar amount. For example, during the March 4, 2022 conference before Judge Amon, defense counsel stated that he could

not confirm whether JetBlue was committed to changing this practice, but instead stated that JetBlue would approach cases like this on a "case-by-case" basis. Mar. 4, 2022 Conf. Tr., ECF No. 21 at 9-10. During the February 15, 2023 conference before Judge Bloom, JetBlue described the practice at issue as "automatic" and (for reasons counsel did not elaborate upon) a "bad practice[]," which denotes that the practice is routine. Feb. 15, 2023 Conf. Tr., ECF No. 37 at 8. Plaintiffs have sufficiently pled that the practice is, in fact, routine given that they separately suffered the same injury — a withholding of their TSA fee refund from their original form of payment — in different JetBlue markets when cancelling their tickets over a two-year period. Indeed, in *Amadei* and *Deshawn*, the Plaintiffs were able to establish a sufficient likelihood of reexperiencing the challenged action after just one encounter, whereas these Plaintiffs were (collectively) subject to the challenged action by the same airline more than once, in 2021 and 2023. *Amadei*, 348 F. Supp. 3d 145; *Deshawn E. ex rel. Charlotte E.*, 156 F.3d at 345; *see also Roe v. City of New York*, 151 F. Supp. 2d 495, 503 (S.D.N.Y. 2001) ("[T]here is no per se rule requiring more than one past act, or any prior act, for that matter, as a basis for finding a likelihood of future injury.").

Regarding the third factor in *Lyons*, the Court finds that Plaintiffs are more likely than simply "any other citizen" to be subjected to the challenged behavior. Courts in this Circuit have found that the frequency of a plaintiff's interaction with the defendant's challenged action can establish that plaintiffs face a particularized risk of experiencing future harm. *See, e.g., Amadei*, 348 F. Supp. 3d at 161 (citing plaintiffs' frequent domestic air travel); *Ligon v. City of New York*, 925 F.Supp.2d 478,

522 n.320 (S.D.N.Y. 2013) (finding that "in light of the frequency of unlawful trespass stops" in certain designated areas, "even those plaintiffs who have only been subjected to such a stop one time would likely have standing" to challenge the stops, "provided that they continue to live in or visit" such areas); *An v. City of New York*, No. 16-cv-5381, 2017 WL 2376576, at *5 (S.D.N.Y. 2017) (finding the plaintiff, who had been arrested once by the NYPD for filming police, had standing to seek prospective relief from this arrest practice because he alleged that he "continue[d] to film public police activity about twice per month and that this conduct will bring him into contact with police officers."); *Roe*, 151 F.Supp.2d at 502–03 (finding that putative class members who frequented a legal safe injection site had standing to seek prospective relief against the NYPD's practice of arresting visitors to injection sites because the plaintiffs alleged a widespread pattern of arrests at a specific site, despite the fact that the plaintiffs had only been arrested there once before). Here, Crist has asserted that he flies JetBlue several times a year, is a member of JetBlue's frequent flyers' reward program, and will likely fly JetBlue in the future due to its fares and routes. SAC ¶¶ 11–12, 20. Both plaintiffs cite the "limited marketplace for air travel, the predominance of JetBlue within the relevant markets, and their travel histories" as additional factors increasing the likelihood that they will encounter JetBlue's challenged policy in future travel. *Id.* at ¶35. The Court agrees that Plaintiffs have sufficiently alleged that they are more likely than "any other citizen" to be harmed by JetBlue's challenged behavior in the future.

Fourth, courts have found that whether Plaintiffs' risk of experiencing

recurring harm depends on lawful or unlawful activity to be an important factor in determining whether a plaintiff faces substantial risk of imminent harm. *See Floyd v. City of New York*, 283 F.R.D. 153, 169–70 (S.D.N.Y. 2012) ("[U]nlike the plaintiff in *Lyons*… [the plaintiff's] risk of future injury does not depend on his being arrested for unlawful conduct and so he cannot avoid that injury by following the law."). For example, in *An*, the district court found that the plaintiff, who had been arrested once by the NYPD for filming police, had standing to seek prospective relief from the arrest practice because he alleged that he "continue[d] to film public police activity about twice per month and that this conduct will bring him into contact with police officers." *An*, 2017 WL 2376576, at *5; *see also Ligon*, 925 F.Supp.2d at 522 n.320 (S.D.N.Y. 2013) (finding that "in light of the frequency of unlawful trespass stops" in certain designated areas, "even those plaintiffs who have only been subjected to such a stop one time would likely have standing" to challenge the stops, "provided that they continue to live in or visit" such areas); *Amadei,* 348 F. Supp. 3d at 154 (finding that the plaintiffs had standing and were at risk of being subject to searches by engaging in the lawful activity of domestic airline travel); *Roe*, 151 F.Supp.2d at 503–04 (collecting cases that distinguished *Lyons* where plaintiffs were engaging in lawful behavior). Here, too, Hahn's and Crist's claim that they face a substantial risk of experiencing the alleged harm at issue — being deprived of a refund of their unused TSA fee — arises from the fact that they continue to periodically engage in the lawful activity of purchasing, and potentially cancelling, a JetBlue airline ticket.

For the reasons stated above, Plaintiffs have sufficiently pled that they face a substantial risk of future harm sufficient to seek injunctive relief.

### b. Adequate Remedy at Law

Defendant next argues that Plaintiffs' claims for injunctive relief fail as a matter of law because Plaintiffs have an adequate remedy at law: namely, they can simply file suit (as they have here) for breach of contract to recover monetary damages if they purchase a future JetBlue ticket and JetBlue does not refund the TSA fee in accordance with the contract of carriage. Mot. to Dismiss SAC at 30. The Court disagrees. It is true as a technical matter that if Plaintiffs have a dispute with JetBlue in the future over what they contend are wrongfully withheld TSA fees in violation of the parties' contract, they can file still more individual breach-of-contract lawsuits to try and recover those fees. But at this stage of the litigation, Plaintiffs have sufficiently pled that individual suits for monetary damages may not be an *adequate* vehicle to compensate them for their injuries.

To obtain a permanent injunction, a party seeking such relief must demonstrate, among other things, that "'it has suffered an irreparable injury.'" *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160–61 (2d Cir. 2012) (quoting *eBay Inc.*, 547 U.S. at 391). However, "[i]f an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004); *Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I, LLC*, 582 F. Supp. 2d 616, 625 (S.D.N.Y.

2008).

While courts have generally found that an adequate remedy at law exists when monetary damages may redress the injury, the key inquiry here is whether an award of monetary damages would "adequately" and "appropriately" compensate Plaintiffs. Defendant argues that money damages — a return of the TSA Fee plus any applicable prejudgment interest — constitutes an adequate remedy at law for Plaintiffs' breach of contract claims. Mot. to Dismiss SAC at 30. However, Defendant fails to meaningfully address Plaintiffs' arguments that the available monetary damages do not adequately compensate future plaintiffs because the costs they must incur to bring each suit vastly exceeds any potential recovery.

As discussed previously, Plaintiffs have pled, and Defendant has confirmed on the record, that JetBlue will continue to withhold the TSA Fee after customers cancel certain low-fare flights. Feb. 15, 2023 Conf. Tr. at 8. In Hahn's case, the TSA Fee was only returned after Hahn's attempts to resolve the issue using JetBlue's customer service outlets were unsuccessful, and he initiated litigation. *See* SAC ¶ 9–10. And in Crist's case, his written requests to obtain a full refund of the TSA fee resulted only in a credit to his Travel Bank which, he later discovered, contained various restrictions on its use towards future travel. SAC ¶ 16. While filing suit against JetBlue to recover a full refund of the $5.60 fee was (and remains) an option for these Plaintiffs going forward, they can no longer seek to proceed as a class now that the class action waiver provision in JetBlue's CofC has been deemed enforceable. SAC ¶ 34. Thus, Plaintiffs argue, "[c]onsidering the low amount in dispute for an

individual plaintiff, and the unavailability of attorney's fees on a breach of contract claim under New York law, filing such a suit would be impracticable, and even a successful plaintiff would expend more money in litigation than could possibly be recovered." *Id.* Further, "[t]he filing fee alone exceeds the amount at issue for any individual." *Id.*

Plaintiffs have sufficiently pled that the resources they must expend seeking redress for these repeatable harms will far outweigh any monetary damages they may receive, and thus defeats JetBlue's argument that this remedy is "adequate" as a matter of law. Even if a JetBlue traveler were to file her individual claim *pro se* (or somehow obtain *pro bono* legal representation in a monetary dispute of this size with no possibility of a fee award), the filing fee in the Eastern District of New York for any litigant who is not indigent is $405 – nearly 70 times the amount of the $5.60 TSA Fee in dispute. And because JetBlue's customers are bound by the airline's class action waiver, Plaintiffs cannot leverage their collective resources to recover the filing fee or other litigation costs by proceeding as a class action. *See* Fed. R. Civ. Proc. 23(h) (permitting "reasonable attorney's fees and nontaxable costs" as authorized by law or in conjunction with settlement). For these reasons, Plaintiffs have sufficiently pled that individual suits for breach-of-contract damages are not an "adequate remedy at law" in the event of a recurring future injury, *Register.com, Inc.*, 356 F.3d at 404, and they may seek an injunction to redress what they contend is the irreparable harm caused by JetBlue's practices.

In denying Defendant's motion to dismiss the SAC's prayer for injunctive relief,

the Court underscores the limited scope of its ruling. The Court holds only that Defendant's challenge to Plaintiffs' standing to seek an injunction (*i.e.*, its claims that Plaintiffs have not alleged a substantial risk of future harm) and to the legal sufficiency of Plaintiffs' plea for injunctive relief (*i.e.*, its claim that Plaintiffs have an adequate remedy at law in any subsequent disputes over their TSA fees) are without merit. In other words, Plaintiffs have adequately pled facts that permit them to *seek* an injunction barring JetBlue from retaining the TSA fees of passengers who do not fly as scheduled. But the Court takes no position on whether Plaintiffs would be entitled to obtain their requested injunction even if they prevail on their underlying breach of contract claims. That is an issue whose potential resolution awaits discovery, summary judgment proceedings, and/or trial. And it would involve an analysis of all the required elements for injunctive relief on a complete record that this Court need not, and does not, conduct in denying Defendant's Rule 12 motion.

### C. Plaintiffs' Claim for Declaratory Relief

Next, Defendant contends that Plaintiffs' plea for a declaratory judgment should be dismissed as duplicative of their breach of contract claims. Mot. to Dismiss SAC, ECF No. 47-1 at 31–33. The Court agrees.

A district court asks the following two questions when determining whether to entertain an action seeking a declaratory judgment: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005)

(citation omitted). Courts will also consider whether (1) the declaratory relief is duplicative of other claims; and/or (2) whether the plaintiff has an adequate, alternative remedy in another form of action. "[D]eclaratory judgment claims that duplicate substantive claims [however,] should be dismissed." *Beach v. HSBC Bank USA, N.A.*, No. 17-cv-5153, 2018 WL 3996931, at *7 (S.D.N.Y. Aug. 21, 2018) (collecting cases).

In their Second Amended Complaint,[8] Plaintiffs seek "[a] declaration that Defendant's withholding refunds of TSA Fees is a breach of the contract between JetBlue and its passengers." SAC at 13. However, the Court finds that Plaintiffs' claim for declaratory relief is duplicative of Plaintiffs' breach of contract claims because the claims are premised on the same facts and allege the same damages, which is sufficient for the Court to find that the claims are duplicative. *Burgeson v. Downing*, No. 3:06cv1663, 2009 WL 185593, at *1 (D. Conn. Jan. 22, 2009) ("If plaintiff were to prevail on his claims for damages, the Court necessarily would have determined that plaintiff's rights were violated. A declaration to that effect adds nothing to the case. Accordingly, all claims for declaratory relief will be denied."). Courts generally reject a declaratory judgment claim as duplicative when other claims in the suit will resolve the same issues, and here, any resolution of Plaintiffs'

---

[8] Plaintiffs argue that Defendants have waived this issue because they failed to raise it in their initial Rule 12 motion before Judge Amon. But Hahn did not seek a declaratory judgment in the prayer for relief in his original complaint. *See* Compl., at 9. Hahn added it in his First Amended Complaint, and Defendant included this claim in its first Motion to Dismiss filed thereafter, which was denied without prejudice when this Court granted leave to amend to add Crist as a plaintiff.

breach of contract claim in Plaintiffs' favor will resolve the sole issue presented in Plaintiffs' declaratory judgment claim, which asks the court to declare that JetBlue breached its contract. *See, e.g.*, *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F.Supp.3d 276, 286 (S.D.N.Y. 2016) ("Courts generally reject a [Declaratory Judgment Act] claim when other claims in the suit will resolve the same issues."); *Altruis Grp., LLC v. ProSight Specialty Mgmt. Co.*, No. 1:21-cv-10757, 2023 WL 2242048, at *4 (S.D.N.Y. Feb. 27, 2023) ("Altruis' request that the Court declare that "Defendants have materially breached the [NMA]" is—quite transparently—a mere rephrasing of the breach of contract claim). Courts generally reject a declaratory judgment claim as duplicative when other claims in the suit will resolve the same issues. *See, e.g.*, *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F.Supp.3d 276, 286 (S.D.N.Y. 2016). As is the case here, other courts in this Circuit have found "[a] cause of action for declaratory relief to be 'unnecessary' when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract." *J.C. Penney Corp. v. Carousel Ctr. Co.*, 635 F. Supp. 2d 126 (N.D.N.Y. 2008) (finding the plaintiff's declaratory judgment claims to be "unnecessary," because the Court's resolution of plaintiff's breach-of-contract claims regarding the methods used to calculate plaintiff's past escalation payments will provide binding authority for the correct methods going forward). Accordingly, the Court dismisses Plaintiffs' claim for declaratory judgment as duplicative.

### D. ADA Preemption

#### 1. Potential Waiver of Defendants' ADA Preemption Defense under Federal Rules of Civil Procedure 8(c) and 12(g)(2)

The Court also *sua sponte* considers whether Defendant waived its ADA preemption argument pursuant to Federal Rules of Civil Procedure 8(c) and 12(g)(2) by not including it in its answer, prior pre-motion conference letters, previous pre-motion conferences, or prior Rule 12(b) motions to dismiss. The Court concludes that ample grounds exist for it to find that JetBlue has waived its preemption defense; nonetheless, for the reasons discussed below, the Court will exercise its discretion to excuse JetBlue's highly belated assertion of this defense and consider its merits.

First, the Court finds that Defendant's ADA preemption argument is subject to waiver pursuant to Federal Rule of Civil Procedure 8(c), because ADA preemption is an affirmative defense that was not raised in Defendant's answer.

Rule 8(c) states that "in responding to a pleading, a party must affirmatively state any avoidance or *affirmative defense*." Fed. R. Civ. P. 8(c) (emphasis added). While ADA preemption is not an affirmative defense explicitly listed in Rule 8(c), Courts have held that federal preemption is an affirmative defense, and therefore is subject to Rule 8(c). *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251 n.2 (2011) (Sotomayor, J. dissenting) ("Federal preemption is an affirmative defense upon which the defendant bears the burden of proof." (citations omitted)); 2 Moore's Federal Practice–Civil § 8.08 (2023) (noting that "federal preemption" is one of the "[a]ffirmative defenses and avoidances other than those specifically referenced in Rule 8(c)"); and *Brockington v. Dollar Gen. Corp.*, No. 1:22-CV-06666 (LJL), 2023 WL 6317992, at *5 (S.D.N.Y. Sept. 28, 2023) ("Federal preemption is an affirmative defense."). "One of the core purposes of Rule 8(c) is to place opposing parties on notice

that a particular defense will be pursued so as to prevent surprise or unfair prejudice." *Reives v. Lumpkin*, 632 F. App'x 34, 35 (2d Cir. 2016) (citing *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971)).

In general, "[f]ailure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 176 (2d Cir. 2014) (citation and quotation marks omitted); *Hunt v. Con Edison Co. N.Y.C.*, No. 16-CV-0677 (MKB), 2018 WL 3093970, at *4 (E.D.N.Y. June 22, 2018) (quoting *U.S. For & on Behalf of Mar. Admin. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 889 F.2d 1248, 1253 (2d Cir. 1989)) (internal citations and quotation marks omitted).  However, a district court may entertain unpled affirmative defenses in the absence of undue prejudice to the plaintiff, bad faith, or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also, e.g., Reives*, 632 F. App'x at 35 (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283–84 (2d Cir.2000)) (allowing an affirmative defense to be raised at the summary judgment stage); *Gilmore v. Gilmore*, 503 Fed.Appx. 97, 99 (2d Cir.2012) (allowing an affirmative defense to be raised for the first time in a joint pretrial order, because "waiver of affirmative defenses not raised in a defendant's answer is not automatic, and as a practical matter there are numerous exceptions.") (internal quotations and citations omitted).  "An inquiring court must examine the totality of the circumstances and make a practical, commonsense assessment about whether Rule 8(c)'s core purpose—to act as a safeguard against surprise and unfair prejudice—has

been vindicated." *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 450 (1st Cir. 1995) (internal quotations and citation omitted) (denying leave to amend when Defendant did not raise ERISA preemption in its answer, at the pretrial hearings, in the pretrial memoranda, or at any point during discovery, but rather raised it only five days before trial.); *see also Easton Rae, LLC v. Violet Grey, Inc.*, 2023 U.S. Dist. LEXIS 54321, at * 9 (S.D.N.Y. 2023) (Rule 12(g)(2) is understood to "bar successive 12(b)(6) motions containing arguments that could have been raised in earlier motions" (quoting *Polidora v. Dagostino & Assocs.*, 2021 U.S. Dist. LEXIS 187583, at *1 n.1 (S.D.N.Y. Sept. 29, 2021))).

The general rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith. *See State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981). However, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir.1983) (citing *Advocat v. Nexus Indus., Inc.*, 497 F.Supp. 328, 331 (D. Del. 1980)). Courts have also found that "[m]ere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Fluor*, 654 F.2d at 856.

When allowing defendants to assert affirmative defenses that were not raised in the answer but were raised in subsequent filings, courts may use their discretion to construe a defendant's motion as a motion to amend under Federal Rule of Civil Procedure 15(a). For example, in *Monahan*, the Second Circuit found that the district

court had discretion to entertain defendant's affirmative defense of *res judicata* in a motion for summary judgment, even though it was not raised in the answer, by construing the motion as one for leave to amend the defendant's answer. *Monahan*, 214 F.3d at 283; *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (finding that the district court did not abuse its discretion when it construed the summary judgment motion also as a motion to amend under Fed.R.Civ.P. 15(a) given that Rule 15(a) provides that leave to amend "shall be freely given when justice so requires.").

As noted previously, JetBlue failed to raise ADA preemption in its answer, which was filed on September 7, 2022. Nor did it raise that potential defense in any of its pre-motion conference letters, at the pre-motion conferences themselves, or its two prior fully briefed motions to dismiss. Specifically, JetBlue did not assert its ADA preemption defense in any of the following, relevant filings or proceedings prior to the instant motion: the Jan. 31, 2022 pre-motion conference letter (directed at Hahn's original complaint), ECF No. 10; the Mar. 4, 2022 pre-motion conference before Judge Amon, ECF No. 21; its fully briefed motion to dismiss Hahn's complaint dated June 3, 2022, ECF No. 16; oral argument before Judge Amon on July 19, 2022; its answer to Hahn's complaint dated Sep. 7, 2022; its letter seeking a pre-motion conference on its anticipated motion under Rule 12(c), filed Dec. 6, 2022, ECF No. 30; at the pre-motion conference on the Rule 12(c) motion held by this Court on Jan. 18, 2023; in its motion to dismiss the first amended complaint, filed February 13, 2023; the February 15, 2023 conference before Magistrate Judge Bloom; and in its letter filed in

anticipation of its motion to dismiss the second amended complaint dated October 24, 2023, ECF No 43.

When asked at oral argument why this defense was not raised previously, defense counsel stated that "[w]e honestly believed that this case was over" after Judge Amon dismissed the class action allegations in her opinion and order dated August 25, 2022; counsel further explained that some of the more analogous district court cases finding ADA preemption post-dated the filing of Hahn's original complaint. Oral Arg. Tr. at 14. Neither excuses Defendant's failure to raise this issue until now. Since the inception of this action, Plaintiffs have pled a breach of contract claim against JetBlue, the nature of which has remained unchanged even after the joinder of Crist. As a major national airline, JetBlue and its counsel were well aware of the ADA and its preemption clause – a federal statute that broadly deregulated the entire industry, and which has been on the books since 1978. The Supreme Court's decision in *Wolens* dates back to 1995, with many of the post-*Wolens* cases on which Defendant relies having been decided long before Hahn initiated this action in 2021. It is also difficult to discern how defense counsel could have reasonably "believed that this case was over" after Judge Amon dismissed the class action allegations, since that same opinion and order denied JetBlue's motion to dismiss Hahn's individual breach of contract action as moot. Further, even if Defendant presumed that Hahn and his counsel would abandon the case after the class action waiver was upheld, it was certainly clear this was not the case by the time Plaintiff filed his letter opposing JetBlue's request for a Rule 12(c) pre-motion conference on December 13, 2022. Pl.'s

Opp to Dec. 2022 PMC Letter, ECF No. 31.

Nor can it be said that the nature of JetBlue's preemption defense has been affected by Plaintiffs' amendments to the complaint. *See Ogunkoya v. Cty. of Monroe*, 2020 U.S. Dist. LEXIS 118580, *9–10 (E.D.N.Y. Jul. 7, 2020) ("[T]he filing of an amended complaint 'does not automatically revive the defenses and objections a defendant waived in its first motion to dismiss, nor does it allow a defendant to advance arguments that could have been made in the first motion to dismiss.'") (quoting *Jones v. U.S. Bank Nat. Ass'n*, 2012 U.S. Dist. LEXIS 34873, at *8 (N.D. Ill. Mar. 15, 2012)). While Defendant did note in its answer that the "Complaint fails to state a claim upon which relief can be granted," this defense was not remotely specific enough to plead ADA preemption. *See Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (citing decisions in which "[a] general assertion that the plaintiff's complaint fails to state a claim is insufficient to protect the plaintiff from being ambushed with an affirmative defense."); *see also Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (holding that a general denial of allegations is insufficient to plead an affirmative defense). In sum, this defense was readily available to Defendant since it was served with Plaintiffs' original complaint, and therefore, pursuant to Fed. R. Civ. P. 8(c) and 12(g)(2), there is ample grounds for this Court to hold that Defendant's ADA preemption defense is waived and cannot be asserted in this successive Rule 12(b)(6) motion, as this argument was not included in JetBlue's answer, two pre-motion conference letters, or the three previously filed motions to dismiss.

For all of these reasons, the Court would be well within its rights to bar JetBlue from raising a preemption defense after two-and-one-half years of litigation (and several rounds of motion practice). However, while it is a close call, the Court will nevertheless construe Defendant's motion to dismiss as a motion for leave to amend and consider the merits of its ADA preemption arguments. Defendant's delay in bringing this claim was unreasonable, but ultimately, there is limited prejudice to Plaintiffs, and there appears to be no bad faith or dilatory motive on the part of the Defendant.

In particular, given that the parties are still in relatively early stages of discovery and Plaintiffs have had a chance to fully brief and argue the issue, there is limited risk of undue prejudice. *Gilmore v. Gilmore*, 503 F. App'x 97, 99 (2d Cir. 2012) (noting that the Second Circuit has held that where plaintiffs are provided with notice and an opportunity to respond, a court may, in its discretion, permit a defense to be raised for the first time on summary judgment). Indeed, Plaintiffs have conceded that there "is no legal prejudice here" by allowing Defendant to assert its ADA preemption argument. Pl. Rule 8 Supp. Br. at 3. In addition, there is no evidence that the delay was in bad faith or premised on a dilatory motive. The parties are still in discovery and no trial date has been set, so allowing Defendant to assert this affirmative defense at this time does not risk further delay in the proceedings. Finally, the Court recognizes that the ADA is a fundamental component of the law governing air carriers and that courts are obligated to give full effect to Congress' intent to deregulate the national market for air travel, which precludes states from

disrupting that mandate through their own laws or policies. This heightens the importance of giving due consideration to the merits of an air carrier's ADA preemption defense, even where (as here) the Court ultimately concludes that the lawsuit is outside the scope of the preemption clause.

## 2. Whether the ADA Preempts Plaintiffs' Lawsuit

In 1978, Congress enacted the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1), in an attempt to deregulate domestic air travel. "To ensure that the States would not undo federal deregulation with regulation of their own, … the ADA included a preemption clause." *Am. Airlines Inc., v. Wolens,* 513 U.S. 219, 222 (1995) (internal quotation marks and citation omitted). That clause reads, in relevant part: "[A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier ...." 49 U.S.C. § 41713(b)(1).

The Supreme Court broadly interpreted the preemptive reach of the ADA in *Morales v. Trans World Airlines Inc.*, holding that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted.'" 504 U.S. 374, 384 (1992). Although the ADA preemption clause refers specifically to state law, courts have also found claims preempted when resolution of those claims requires application of a federal law or regulation that is external to the parties' agreement. *See Bevacqua v. Sw. Airlines Co.*, No. 3:22-CV-1837-L, 2023 WL 5918924, at *4 (N.D. Tex. Sept. 8, 2023) (collecting cases).

In *Wolens*, however, the Supreme Court held that "the ADA permits state-law-

49

based court adjudication of routine breach-of-contract claims." 513 U.S. at 232. Courts often refer to this rule as the "*Wolens* exception" to what is otherwise a broad preemption clause. In so holding, the *Wolens* Court noted that the "distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. Under *Wolens*, although most state-law claims are preempted by the ADA, "the ADA's preemption clause does not extend so far as to 'shelter airlines from suits ... seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings.'" *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) (quoting *Wolens*, 513 U.S. at 228). Such undertakings "are privately ordered obligations" that "simply hold[ ] parties to their agreements," rather than ADA-preempted state-imposed laws or regulations. *Wolens*, 513 U.S. at 228–29. "This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233; *Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283, 285 (2d Cir. 2019) (quoting *Wolens*, 513 U.S. at 233).

To determine whether a breach of contract claim falls within the *Wolens* exception, Courts must determine (1) that the claim alleged only concerns a self-imposed obligation within the parties' contract; and (2) no enlargement or enhancement of the contract occurs based on state laws or policies external to the agreement. *Wolens*, 513 U.S. at 233.

Defendant argues that Plaintiffs' breach of contract claim is preempted by the ADA because it falls outside the *Wolens* exception. Specifically, Defendant notes that the lone subsection of the CoC upon which Plaintiffs rely here — provision 4.a.2.b — obligates JetBlue only to refund "taxes and fees" as required by "applicable law" but does not explicitly reference or incorporate the regulation that Plaintiffs say mandates the full refund of their unused TSA fees: 49 C.F.R. § 1510.9(b). That regulation states, in relevant part: "Any changes by the passenger to the itinerary are subject to an additional collection or refund of the security service fee . . . as appropriate." 49 C.F.R. § 1510.9(b) (emphasis added).

According to Defendant, because 49 C.F.R. § 1510.9(b) is not expressly referenced in the contract itself, Plaintiffs' suit fails both prongs of the *Wolens* exception. As to the first prong, Defendant argues that the contract's reference to refund of air travelers' fees "as required by applicable law" did not bind the airline to follow 49 C.F.R. § 1510.9 specifically, and thus does not constitute a self-imposed contractual obligation. Mot. to Dismiss SAC at 23. As to *Wolens*' second prong, Defendants argue (in a largely similar vein) that Plaintiffs' reliance on 49 C.F.R. § 1510.9 would require the fact finder to impermissibly "enlarge or enhance" the parties' contract based on "laws or policies external to the agreement" to resolve the merits of their dispute. *Id.* at 27–29.

The Court disagrees, for several reasons. First, JetBlue admits that the sole federal regulation cited by Plaintiffs as the basis for its breach of contract claim is the *only* "applicable law" nationwide that governs whether and when an airline must

refund a passenger's TSA Fee. May 13, 2024 Oral Arg. Tr. at 9.[9] And Plaintiffs' claim turns on their contention that JetBlue violated its contractual pledge to follow "applicable law" with respect to *TSA fees specifically*; they are not asking this Court to consider other "taxes and fees" that might be refundable under section 4.a.2.b of the contract. Thus, when considering Plaintiffs' breach of contract claim in light of the specific injury for which they seek redress, the Court agrees that the SAC plausibly alleges that JetBlue breached "its own, self-imposed undertaking" within the meaning of *Wolens* — namely, to follow the only "applicable law" (49 C.F.R. § 1510.9) that governs an airline's duty to give passengers a refund of unused TSA fees. Similarly, JetBlue's inability to identify any other "applicable law" that could possibly govern the parties' rights to keep or recover disputed TSA fees provides strong support for Plaintiffs' allegation that the CoC incorporated 49 C.F.R. § 1510.9(b) in the parties' agreement.

For this reason, JetBlue has not established, as a matter of law, that adjudication of the parties' specific breach-of-contract dispute (*i.e.,* one that concerns only Plaintiffs' alleged entitlement to a refund of TSA fees) with reference to 49 C.F.R. § 1510.9(b)'s terms would involve an "enlargement or enhancement" of the contract based on "laws or policies external to the agreement." *Wolens*, 513 U.S. at 233. Of course, whether the regulation cited by Plaintiffs *actually* requires JetBlue to refund

---

[9] During oral argument on this instant motion, when asked by the Court if there was any other regulation — other than 49 C.F.R. § 1510.9 — that the Court would need to interpret to adjudicate the merits of Plaintiffs' breach of contract claim, defense counsel agreed there was none (adding, "not for the TSA [fee] specifically").

their unused TSA Fees as they claim is a question not presented here. But for purposes of defeating JetBlue's preemption defense, Plaintiffs have sufficiently alleged that the party who drafted the contract (JetBlue) knowingly bound itself to follow that mandate, and that their breach-of-contract claim falls under *Wolens*.

JetBlue's concession that 49 C.F.R. § 1510.9(b) is the only "applicable law" on point distinguishes this case from other out-of-circuit decisions it cites in which courts have found that suits for refunds of government fees associated with air travel were preempted by the ADA. For example, in *Bevacqua*, the Court found Plaintiff's breach of contract claim preempted as an impermissible "enlargement" of the contract based on external sources because the Court "cannot verify that § 1510.9 is the only applicable regulation on the issue of TSA Security Fees without combing through scores of federal regulations." 2023 WL 5918924 at *5. This is not the case here, where the parties agree that 49 C.F.R. § 1510.9(b) is the only regulation on point, such that the Court need not search external sources or grapple with any ambiguity regarding what regulations or laws may govern a particular term of the contract. Plaintiffs' case is also distinguishable from *Spencer v. Delta Air Lines, Inc.* because the relevant contract of carriage provision in that case did not explicitly require Delta Airlines to refund government fees in line with applicable laws – instead, Delta's contract of carriage stated that "Delta *will not refund* any taxes, fees or charges collected upon nonrefundable tickets." No. 523CV00920HDVAFM, 2023 WL 7312966, at *2 (C.D. Cal. Oct. 2, 2023) (emphasis supplied), *appeal dismissed*, No. 23-3287, 2024 WL 398431 (9th Cir. Feb. 1, 2024). In the recent case of *Nasr v. JetBlue*

*Airways Corp.*, No. 8:23-cv-01839-JWH-ADSx, 2024 U.S. Dist. LEXIS 51748 (C.D. Cal. Mar. 18, 2024), the court found that the breach of contract claim against JetBlue under this same airline's contract of carriage was preempted. But the *Nasr* plaintiffs rested their breach of contract claim on different provisions in JetBlue's CoC than is at issue in this case, and the language on which they relied did not even relate to the refund of taxes or fees.[10] Instead, the cited language in *Nasr* generally proclaimed that JetBlue should operate in accordance with "applicable government laws and regulations" without expressly discussing refunds, taxes, or fees. *Id.* at *4.

Second, Defendant's ADA preemption argument runs afoul of the approach taken by the Second Circuit in *Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283, 285 (2d Cir. 2019). Although *Cox* is an unpublished opinion, this Court must view it as highly persuasive authority. *See, e.g., Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 617 n.5 (E.D.N.Y. 2011); *LaSala v. Bank of Cyprus Pub. Co.,* 510 F.Supp. 2d 246, 274 n.10 (S.D.N.Y. 2007) (finding an unpublished Second Circuit opinion "highly persuasive ... and eminently predictive of how the Court would in fact decide a future case such as this one."). *Cox* appears to be the only post-*Wolens* case in which the Second Circuit has applied the Supreme Court's exception to ADA preemption in a breach of contract action and is the governing approach in this Circuit.

In *Cox*, the Second Circuit held that the breach of contract claims against the

---

[10] The provision at issue in *Nasr v. JetBlue Airways Corp.* was the following: "All transportation is sold and all carriage is performed subject to compliance with all applicable government laws and regulations[.]" 2024 WL 1424934 at *2.

defendant airline were not preempted under the ADA, because the plaintiffs in that case adequately pled a breach of contract claim arising from a provision of the airline's contract of carriage pertaining to carry on baggage limits; the parties disputed the applicability of that contractual provision to their dispute and whether the airline had complied with another provision of federal aviation law when fulfilling its contractual obligations. *Id.* at 285. The district court dismissed the complaint after finding that the ADA preempted the plaintiffs' suit, but the Second Circuit reversed. In so doing, the *Cox* Court conducted a straightforward inquiry to determine whether the *Wolens* exception applied or not: if the parties' contract, interpreted in the light most favorable to plaintiffs, could reasonably be read to find that the alleged injury was "within the scope of [the airline]'s contractual obligations, then the ADA does not preempt Plaintiffs' breach-of-contract claims." *Id.* at 285. To answer this question, the Court applied traditional tools of contract interpretation under New York law. These included resolving any contractual ambiguities in plaintiffs' favor and adhering to the rule that "[an] ambiguity exists where the terms of the contract could suggest more than one meaning" by a reasonable person "who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* at 286 (internal quotations and citations omitted*)*. Since *Cox*, at least one court in this circuit has followed its lead, citing *Cox* to apply *Wolens* in a straightforward manner that asks merely whether an air traveler has plausibly pled a claim for an alleged state-law breach of the airline's contract of carriage, in which case ADA preemption does not apply. *See Sholopa v.*

*Turk Hava Yollari A.O., Inc.*, 595 F. Supp. 3d 257 (S.D.N.Y. 2022) (rejecting ADA preemption defense where air travelers, who sought refunds of their fares after their flights were cancelled due to the COVID-19 pandemic, adequately pled state law breach of contract claims).

Following the *Cox* approach here readily resolves this issue in Plaintiffs' favor. It is, of course, clear that on the face of their SAC, Plaintiffs sole ground for seeking a refund of their unused TSA Fees is JetBlue's alleged breach of section 4.a.2.b of the Contract of Carriage. The only law or policy arguably "external to the agreement," *Wolens*, 513 U.S. at 233, is 49 C.F.R. § 1510.9(b), which Plaintiffs maintain JetBlue agreed to abide by when pledging to follow "applicable law." SAC ¶¶ 22–25. Resolving all ambiguities in Plaintiffs' favor, there is certainly a reasonable interpretation of the contract that supports their claim that JetBlue held itself out as obliged to issue refunds in compliance with this regulation. Following the Second Circuit's approach in *Cox* and applying New York law to interpret a contract's terms with an eye towards what a reasonable person "cognizant of the customs, practices, usages and terminology" of the airline industry would understand them to be, the fact that JetBlue does not dispute that this is the one and only regulation that would constitute "applicable law" in a TSA Fee dispute is significant. *Cox*, 786 Fed App'x at 286. In addition, the SAC cites two reports by federal government agencies that predate the parties' contract and support Plaintiffs' interpretation of 49 C.F.R. § 1510.9(b) as mandating refunds of unused TSA Fees. For example, Plaintiffs cite a 2006 report by the Office of the Inspector General of the United States Department of

Homeland Security which stated that "air carriers have no grounds to keep fees of any kind that are owed to the ticket purchaser or TSA," and a 2010 report by the General Security Administration which underscored that "consumers with unused nonrefundable tickets . . . are entitled to a full refund of the September 11th [TSA] Security Fee." SAC ¶¶ 26–27. Given that JetBlue was one of few major airlines operating in the United States at the time these reports were issued, Plaintiffs have plausibly alleged that JetBlue was aware of them at the time it drafted section 4.a.2.b of its CoC.

During the May 13, 2024 oral argument, Defendant essentially conceded that if the Court finds *Cox* to be highly persuasive authority (as it must: see *supra*), it is bound to find that Plaintiffs' claim is not preempted by the ADA.[11] May 13, 2024 Oral Arg. Tr. at 11. Defendant's concession was an appropriate and necessary one. Assuming all well-pled facts to be true and with all inferences made in their favor, Plaintiffs have adequately pled a breach of contract claim premised on JetBlue's self-imposed undertakings: namely, that JetBlue's CoC incorporates 49 C.F.R. § 1510.9(b), requiring the airline to provide customers with a refund of their TSA Fees for unused travel.

Third, although not necessary to its analysis, the Court notes that applying ADA preemption to a breach of contract action seeking only to recover TSA Fees does

---

[11] In its post-argument letter brief, defense counsel sought to walk back its earlier concession, arguing that this instant case is distinguishable from *Cox*, because here, there is no such ambiguity in JetBlue's Contract of Carriage that could potentially resolve in Plaintiffs' favor and save their breach of contract claims from preemption. Letter Supp. Mot. to Dismiss SAC, ECF No. 50. For the reasons stated above, this belated attempt to distinguish *Cox* and take Plaintiffs' claim outside the *Wolens* exception is unpersuasive.

not appear to align with the ADA's history and purpose: ensuring that national competition in the free market, not individual state policies, will dictate airline prices and services. The Supreme Court has made clear that courts should liberally construe the ADA's "related to" language in determining whether a state enforcement action impacts a "price, route, or service" provided by an airline, to give effect to Congress's "broad pre-emptive purpose." *Morales,* 504 U.S. at 383. In *Morales* itself, the Court held that the ADA preempted states from seeking to enforce fare advertising guidelines through their own consumer protection laws because, even though the states were not directly regulating airfares, the advertising restrictions at issue could, as an economic matter, have a "significant effect upon fares." *Id.* at 388. On the other hand, the *Morales* Court recognized that "[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner to have preemptive effect." *Id.* (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)).

The TSA Fee at issue here appears to fall squarely in this latter category. JetBlue has not argued that a state action enforcing a contractual promise to refund a small, federally mandated TSA Fee, even if successful, will have any impact on an airline's "fares, routes, and services." *Cf., Howell v. Alaska Airlines Inc.*, 994 P.2d 901, 904-905 (Wash. 2000) (finding that plaintiffs' breach of contract claims arising from Alaska Airline's failure to refund nonrefundable airline tickets was preempted by the ADA). The TSA Fee is a uniform governmental tax that does not vary depending on, or in any way impact, an individual airline's rates, routes, or services.

Whether an airline refunds the TSA Fee for a customer's unused travel does not restrict or influence the air travel marketplace. It thus is difficult to discern how a state law breach-of-contract action to recover this uniform, national fee could be viewed as the type of action that the ADA was designed to preempt.

For the reasons discussed above, the Court finds that Plaintiffs have sufficiently pled a breach of contract claim that falls squarely within the *Wolens* exception. Defendant's Rule 12(b)(6) motion as it relates to ADA preemption is DENIED.

### E. Conclusion

For the reasons stated above, Defendant's motions to dismiss is GRANTED in part and DENIED in part.

Dated: June 24, 2024

      Brooklyn, New York

SO ORDERED:

_____/s/ NRM_____

NINA R. MORRISON

United States District Judge