UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————X

SPENCER HAHN *and* JAMES CRIST,

                Plaintiffs,

         v.

JETBLUE AIRWAYS CORPORATION,

                Defendant.

———————————————————X

**MEMORANDUM & ORDER**

21-cv-6867 (NRM)

**NINA R. MORRISON**, United States District Judge:

Now before the Court is a motion filed by JetBlue Airways Corporation ("JetBlue") for summary judgment.

The Court presumes the parties' familiarity with the relevant facts. For a more detailed factual background and procedural history, *see Hahn v. JetBlue Airways Corp.* (*Hahn I*), No. 21-CV-6867 (CBA) (LB), 2022 WL 22908406, at *1–2 (E.D.N.Y. Aug. 25, 2022) and *Hahn v. JetBlue Airways Corp.* (*Hahn II*), 738 F. Supp. 3d 229, 235–37 (E.D.N.Y. 2024).

JetBlue filed a motion for summary judgment on October 22, 2025, along with a memorandum of law in support. Mem. of L. in Supp. of Def.'s Mot. for Summ. J. ("Def. Mem."), ECF No. 75-1. JetBlue's counsel attached a declaration in support of the motion, Decl. of Riyaz G. Bhimani dated Sep. 5, 2025 ("Bhimani Decl."), ECF No. 75-2, as well as numerous exhibits and a statement of material facts, Def.'s Statement of Material Facts ("Def. 56.1 Statement"), ECF No. 75-23. In response, Plaintiffs filed a memorandum of law in opposition. Pls.' Mem. of L. in Opp'n to Def.'s Mot. for Summ. J. ("Pls. Mem."), ECF No. 76. Plaintiffs' counsel also attached a declaration

in opposition to the motion for summary judgment, Decl. of Oren Giskan dated Oct. 6, 2025 ("Giskan Decl."), ECF No. 77, as well as exhibits of their own and a counterstatement of material facts, Pls.' Resp. to Def.'s 56.1 Statement and Statement of Additional Facts ("Pls. 56.1 Statement"), ECF No. 77-12.  JetBlue then filed a reply in support of its motion.  Reply in Supp. of Def.'s Mot. for Summ. J. ("Def. Reply"), ECF No. 78.

JetBlue moves for summary judgment under Federal Rule of Civil Procedure 56 on the following grounds: (1) Plaintiffs' breach of contract claims are preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1), Def. Mem. at 14;[1] (2) JetBlue has not breached the contract as a matter of law, *id.* at 25; (3) Plaintiffs have not suffered any damages, rendering their claim moot, *id.* at 30; and (4) Plaintiffs do not have standing to pursue injunctive relief, *id.* at 32.

For the reasons stated below, JetBlue's motion for summary judgment is DENIED.

## **LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  Courts "construe all the evidence in the light most favorable to the nonmoving party . . . and draw all inferences and resolve all

---

[1] Unless otherwise indicated, all page references use the pagination provided by the Electronic Case Filing System.

ambiguities in that party's favor." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).

In the context of a contract interpretation dispute, summary judgment is appropriate only "when the language of the contract provision is wholly unambiguous or when the language is ambiguous and there is relevant extrinsic evidence, but the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law." *Von Biedermann v. Echo Metrix, Inc.*, No. 10-CV-1805 (ADS) (WDW), 2012 WL 3260285, at *4 (E.D.N.Y. Aug. 6, 2012) (citation modified); *see also Mellon Bank, N.A. v. United Bank Corp. of New York*, 31 F.3d 113, 116 (2d Cir. 1994) ("[W]hen a contract is ambiguous, its interpretation becomes a question of fact and summary judgment is inappropriate."). "[T]he language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Margules v. Mass. Mut. Life Ins. Co.*, No. 23-CV-02584 (DG) (CLP), 2025 WL 2549914, at *13 (E.D.N.Y. Sep. 3, 2025). "Ambiguity is determined by looking within the four corners of the document, not to outside sources." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011). Therefore, "summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case." *Topps*, 526 F.3d at 68.

For JetBlue to prevail on its motion for summary judgment, it must show the relevant contract provision to be "wholly unambiguous." *Von Biedermann*, 2012 WL 3260285, at *4. It can do this by showing either that the language is unambiguous within the context of the contract alone, or that any ambiguity is clearly resolved by unambiguous extrinsic evidence. *Id.* Any remaining ambiguity requires denial of summary judgment. *D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 411 (E.D.N.Y. 2015) ("Generally, if a court finds the contract language to be ambiguous, the court must deny summary judgment." (citing *Topps*, 526 F.3d at 68)).

## DISCUSSION

### I.   The ADA does not preempt Plaintiffs' claims

JetBlue renews the argument upon which it did not prevail in its earlier motion to dismiss: that Plaintiffs' claims are preempted by the ADA. Def. Mem. at 14; *see Hahn II*, 738 F. Supp. 3d at 262.

In its *Hahn II* opinion, the Court noted that "the parties agree that 49 C.F.R. § 1510.9(b) is the only regulation on point," making it unnecessary for the Court to look to sources external to the contract to interpret the contract's pledge to follow "applicable law" with respect to Transportation Security Administration ("TSA") fees. *Hahn II*, 738 F. Supp. 3d at 259. The Court followed *Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283 (2d Cir. 2019), as highly persuasive authority when interpreting the contract in the light most favorable to Plaintiffs to resolve the issue in their favor. *Id.* at 260–62. The Court also found, as an alternative ground for denying JetBlue's motion to dismiss, that applying ADA preemption in the instant case would be

4

inconsistent with the ADA's text, history, and purpose, as the refunding of uniform TSA Fees paid by passengers with cancelled flights has little to no impact on airline "fares, routes, and services." *Id.* at 262.

JetBlue asks the Court to reconsider its earlier decision on this issue, arguing that new caselaw and new evidence supports JetBlue's position on preemption. The Court finds no merit in either argument.

Because JetBlue's new arguments are unpersuasive, the law of the case doctrine supports the Court adhering to its previous ruling.[2] Under the law of the case doctrine, a court generally "will adhere to its own decision at an earlier stage of

---

[2] JetBlue argues that the law of the case doctrine "is not applicable" to its motion, Def. Mem. at 16, asserting that "because of the divergent standard of review applicable to motions to dismiss and motions for summary judgment, the law of the case doctrine is inapposite to the Court's analysis of whether, after the close of discovery, genuine issues of fact have been raised which survive summary judgment," *id.* at 16–17 (quoting *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 142 (E.D.N.Y. 2009)). However, the Court's conclusion as to the preemptive reach of the ADA represents a question of law, not of fact. *See Phong Thanh Nguyen v. Chertoff*, 501 F.3d 107, 111 (2d Cir. 2007) ("The phrase 'questions of law' encompasses, *inter alia*, questions of statutory interpretation."). "While preliminary factual determinations must be revisited against a more complete record, good sense dictates that a court interpret the same statute in the same way throughout a litigation, unless there is an intervening change in the law . . . or unless an earlier interpretation was clearly an error." *City of New York v. Gordon*, 155 F. Supp. 3d 411, 419 (S.D.N.Y. 2015) (citations omitted). Accordingly, the Court may — but is not required to — apply the law of the case doctrine to the instant motion. *See DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citation modified)); *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (noting that the doctrine, "while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons"). The Court notes, however, that even if the doctrine did not apply and this decision as to the scope of the ADA were made on a clean slate, JetBlue's authorities are not persuasive, and the Court's decision would be the same.

the litigation." *United States v. Plugh*, 648 F.3d 118, 123 (2d Cir. 2011) (citation modified). A court may revisit prior rulings, though, when confronted with "cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali*, 529 F.3d at 490 (citation modified). As explained below, neither of JetBlue's new offerings are "cogent and compelling" enough to warrant disturbing the Court's earlier decision on the preemption issue.

### A. The *Bevacqua* opinion is not controlling law and, in any event, is unpersuasive

JetBlue urges the Court to revisit its prior conclusion that the Contract of Carriage ("CoC") could incorporate 49 C.F.R. § 1510.9(b), citing the Fifth Circuit's new opinion in *Bevacqua v. Sw. Airlines Co.*, No. 23-11036, 2024 WL 3673548 (5th Cir. Aug. 6, 2024). *See* Def. Mem. at 18–19.

"While reconsideration is appropriate where there has been an intervening change in controlling law," for courts in this District, "[c]ontrolling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts." *Bonn-Wittingham v. Project O.H.R. (Off. for Homecare Referral), Inc.*, No. 16-CV-541 (ARR) (JO), 2017 WL 2178426, at *1 (E.D.N.Y. May 17, 2017) (citation modified). Thus, *Bevacqua* is not controlling law. Moreover, the Court previously considered the district court opinion in *Bevacqua v. Sw. Airlines Co.*, No. 22-CV-1837 (SAL), 2023 WL 5918924, at *5 (N.D. Tex. Sep. 8, 2023), *aff'd*, No. 23-11036, 2024 WL 3673548 (5th Cir. Aug. 6, 2024), from which the Fifth Circuit appeal was taken. *See Hahn II*, 738 F. Supp. 3d at 259–60

6

(discussing the district court's opinion in *Bevacqua*).  Finally, to the extent *Bevacqua* offers new reasoning that could operate as persuasive authority, this Court is not persuaded by its interpretation of the ADA.

As the Court previously explained in *Hahn II*, 738 F. Supp. 3d at 257–59, its analysis is controlled by *Morales v. Trans World Airlines Inc.*, 504 U.S. 374 (1992), and *American Airlines Inc. v. Wolens*, 513 U.S. 219 (1995).  *Wolens* held that "the ADA permits state-law-based court adjudication of routine breach-of-contract claims."  513 U.S. at 232; *see also Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283, 285 (2d Cir. 2019) (applying *Wolens* to a similar claim in a nonprecedential summary order).  At oral argument on its motion to dismiss, JetBlue conceded that Plaintiffs' claim is not preempted by the ADA if the Court were to follow the application of the *Wolens* exception taken by the Second Circuit in *Cox*.  *Hahn II*, 738 F. Supp. 3d at 261.  Now, however, JetBlue argues that, because it uses a dynamic pricing model and "the base fare is often adjusted downward to offset the effect of mandatory fees such as the TSA Fee," this means that the "Plaintiffs' breach of contract claim arising from JetBlue's refund practices necessarily relates to prices, routes, or services and therefore is preempted."  Def. Mem. at 18.

The problem with JetBlue's argument is that it fails to account for the true contours of the Supreme Court's holding in *Morales* — specifically, that "'[s]ome state actions *may affect airline fares in too tenuous, remote, or peripheral a manner*' to have pre-emptive effect."  504 U.S. at 390 (citation modified) (emphasis added) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)); *see also id.* at 388 (noting

that the ADA preempts state regulations that have "the forbidden *significant* effect upon fares" (emphasis added)).    The Fifth Circuit's ruling in *Bevacqua* neither contended with this aspect of the holding in *Morales* nor cited *Morales* at all. *Bevacqua* instead concerned whether the Southwest Airlines contract at issue in that case incorporated 49 C.F.R. § 1510.9(b) under Fifth Circuit precedent.    *Bevacqua*, 2024 WL 3673548, at \*2 (discussing *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596 (5th Cir. 2010)).    The Court has already explained why this case is distinguishable from *Bevacqua* and instead properly analyzed under the Supreme Court's opinion in *Wolens* and the Second Circuit's decision in *Cox.  Hahn II*, 738 F. Supp. 3d at 258–60. Accordingly, JetBlue must demonstrate that the TSA regulation, incorporated by reference into the CoC, has an impact on airfares that is more than merely "tangential" or "remote" in order for the regulation to be preempted.  And as explained below, JetBlue's evidence at summary judgment that purports to establish a direct relationship between its pricing and the TSA Fee at issue here does not satisfy this burden.

### B. The Jarashow Declaration does not establish that the TSA Fee has a significant impact on fares

JetBlue points to a new piece of evidence it has produced since the motion to dismiss was denied — a declaration from its employee Evan Jarashow, Bhimani Decl., Ex. F (the "Jarashow Declaration"), ECF No. 75-8 — to support its claim that the TSA Fee has an impact on the airline's consumer prices.[3]

---

[3] Plaintiffs ask the Court to exclude the Jarashow Declaration from the record because JetBlue entered it after the close of discovery and because it comes from a new witness substituting for a witness JetBlue had previously identified as its person

8

This evidence also does not persuade the Court. As an initial matter, the Jarashow Declaration notably does not state that the uniform, national TSA Fee at issue here *actually* impacts JetBlue's pricing or fares. Instead, it contains only a conclusory assertions that the airline considers fees "such as the TSA Fee" when setting its prices. But more fundamentally, even if the Court were to presume that the TSA Fee itself has some sort of impact on JetBlue's so-called dynamic pricing system, that does not now mean that 49 C.F.R. § 1510.9(b) satisfies the "significant effects" test articulated in *Morales*. As Plaintiffs point out, *see* Pls. Mem. at 15, even if JetBlue adjusts its price in consideration of having to collect the TSA Fee, that is a separate question from whether (1) JetBlue would adjust its prices further if it is required refund the TSA Fee through a contract that incorporates 49 C.F.R. § 1510.9(b); and (2) that the TSA Fee has a significant effect on ticket prices — that is, an effect that is more than simply "tenuous" or "remote." *Morales*, 504 U.S. at 390.

Because the conclusory assertions in the Jarashow Declaration do not establish that a contractual provision requiring refunds of TSA Fees pursuant to applicable law would have any impact on JetBlue's fares — much less one that is more than negligible — this declaration does not require the Court to revisit its earlier conclusion that the ADA does not preempt Plaintiffs' claims here.

---

with knowledge on this matter. Pls. Mem. at 14–15. However, allowing the Jarashow Declaration does not prejudice Plaintiffs, because Plaintiffs were aware of the previously identified witness would speak to this matter and chose not to depose her in the course of discovery. Def. Reply at 9 n.5.

## II.     A reasonable trier of fact could find that JetBlue breached its contract with Plaintiffs

JetBlue argues that it is entitled to judgment as a matter of law because the summary judgment record establishes that it did not breach the CoC.  Specifically, JetBlue argues that, even if the CoC incorporates 49 C.F.R. § 1510.9(b), that regulation does not mandate a refund in Plaintiffs' case.  The Court disagrees.[4]

A reasonable jury could conclude that JetBlue breached the CoC.  A jury could find that the CoC incorporates 49 C.F.R. § 1510.9(b) because, as the parties agree, this regulation is the only law that covers the obligations contemplated in the CoC — namely, the circumstances under which the airline might be required to refund the TSA Fee charged to passengers who cancel their flights.  Further, a jury could find that the regulation requires a cash refund of the TSA Fee as opposed to a travel credit of some kind, and, thus, that the CoC obligated JetBlue to provide a refund to Plaintiffs.  Finally, a jury could find that Plaintiffs gave sufficient written notice under the CoC when they requested a refund through the chat feature on JetBlue's website.  If a jury were to make these findings, then JetBlue's failure to provide refunds of Plaintiffs' TSA Fees constituted a breach of the CoC.

Accordingly, JetBlue is not entitled to judgment as a matter of law,  and its motion for summary judgment must be denied.

---

[4] Presently before the Court is JetBlue's motion for summary judgment. Because Plaintiffs have not cross-moved for summary judgment, the Court need not consider whether the summary judgment record established a breach of contract as a matter of law.

### III.    Plaintiffs' claims for damages are not moot.

JetBlue argues that this case is moot because Plaintiffs have not suffered any damages, since (1) Plaintiff Hahn has received a refund for his TSA Fee in the original form of payment and (2) Plaintiff Crist received a travel credit which he has subsequently applied towards another flight.

First, with respect to Plaintiff Hahn, nearly four years ago, Judge Amon already held that prejudgment interest constitutes sufficient damages to render his case not moot. *Hahn I,* 2022 WL 22908406, at *3–4. JetBlue now, for the first time, argues that prejudgment interest is not a type of damage in New York breach of contract actions by pointing to *Grobman v. Chernoff,* where the New York Court of Appeals held that "damages and prejudgment interest are not the same thing." 15 N.Y.3d 525, 529 (N.Y. 2010). This distinction demonstrates, JetBlue asserts, that in New York, prejudgment interest alone cannot serve as the only damages claimed for a cause of action.

However, the appropriate time to raise this argument was on a motion for reconsideration before Judge Amon. *Grobman* predates Judge Amon's August 25, 2022 decision by more than a decade, meaning that this argument was available to JetBlue at the time Judge Amon concluded that the dispute over prejudgment interest was sufficient for standing purposes. JetBlue has not explained why it did not raise this argument years before it filed this motion for summary judgment. Were that not enough, in its motion to dismiss Plaintiffs' Second Amended Complaint, JetBlue argued the exact opposite position, asserting that "the potential award of damages in this action should be limited to prejudgment interest on the $5.60 TSA

Fee."  Def. Mem. in Supp. of Mot. to Dismiss at 20, ECF No. 49.  In *Hahn II*, this Court noted that Judge Amon agreed with this position and implicitly adopted it.  *See* 738 F. Supp. 3d at 248 (holding that Plaintiff's "claims for monetary damages . . . from their unrefunded TSA fees (or, in Hahn's case, prejudgment interest) are not moot").

Because the Court adopted JetBlue's earlier position as to the limits of Plaintiff Hahn's potential monetary recovery, under the doctrine of judicial estoppel, JetBlue may not now raise this contradictory argument as to prejudgment interest at summary judgment.  *See Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."); *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (noting that the application of judicial estoppel depends on the "specific factual context before the court" and generally requires that (1) "the party's later position must be clearly inconsistent with its earlier position"; (2) "the party has succeeded in persuading the court to accept that party's earlier position"; and, sometimes but not always, (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped" (citation modified) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001))).

Second, with respect to Plaintiff Crist, this Court concludes that a reasonable jury could find a JetBlue travel credit not equivalent in value to legal tender currency.

12

Plaintiffs contend that $11.20 in "United States dollars" carries far more possible uses and thus value than "a credit that expires in twelve months that can only be used for one purpose—to pay JetBlue." Pls. Mem. at 30–31. A jury could agree. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 636–37 (7th Cir. 2014) (noting that, in the class coupon settlement context, that "store credit for $10 is not as valuable to the recipient as $10 in cash.").

Additionally, Plaintiffs' claims are not moot because, separately from monetary damages, they seek an injunction. Second Amended Compl. at 13, ECF No. 42. Federally, "[a] live controversy remains as long as 'a court can fashion some form of meaningful relief' to award the complaining party, and even '[t]he availability of [a] possible remedy is sufficient to prevent [a] case from being moot." *Exxon Mobil Corp. v. Healey,* 28 F.4th 383, 392 (2d Cir. 2022) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12–13 (1992)) (citation modified). Indeed, "a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation modified). Here, Plaintiffs continue to seek equitable relief against JetBlue regarding future TSA Fees. Even putting aside any issues with the monetary relief they seek, then, Plaintiffs' claims are not moot.[5]

---

[5] As a final point here, dismissing Plaintiffs' claims for mootness at this stage would raise serious equitable concerns. Operating after Judge Amon's finding that prejudgment interest constitutes damages sufficient to render Plaintiffs' claims not moot — a finding JetBlue did not challenge in its last motion to dismiss — this Court dismissed Plaintiffs' claim for declaratory relief as duplicative of their breach of contract claims. To now reverse course on the question of mootness of breach of contract claims would undermine the logic of the earlier dismissal, which deprived

## IV.    Plaintiffs have standing to pursue injunctive relief.

This Court already determined Plaintiffs had standing to seek injunctive relief at the motion to dismiss stage. *See Hahn II*, 738 F. Supp. 3d at 247–53.  JetBlue now renews its argument, however, asserting that, at summary judgment, Plaintiffs' standing must find support in evidence rather than mere allegations.  Def. Mem. at 27–28.

Based solely on the pleadings at the motion to dismiss stage, this Court found the Plaintiffs faced "a particularized risk of experiencing future harm." *Hahn II*, 738 F. Supp. 3d at 250.  The Court based that finding on caselaw within the Second Circuit holding that the "frequency of a plaintiff's interaction with the defendant's challenged action" can establish that risk.  *Id.*  This Court found sufficient frequency was alleged by Plaintiffs when they detailed their past flights with JetBlue.  *Id.*  The Court also considered Plaintiffs' membership in JetBlue's frequent flyers' reward program and JetBlue's predominance in a limited market of airlines.  *Id.*

Development of the record has only provided further support for these allegations.  The record indicates Plaintiff Hahn purchased another nonrefundable JetBlue ticket after the ticket at issue here, which he also canceled.  Bhimani Decl., Ex. G at 53:20–54:23, 55:5–19, ECF No. 75-9.  The record further shows that Plaintiff Crist, like Plaintiff Hahn, is a member of JetBlue's rewards program.  Bhimani Decl., Ex. O at 19:2–7, ECF No. 75-17; Ex. P, ECF No. 75-18.  Moreover, Plaintiff Crist belongs to about a dozen airline rewards programs and flies around two dozen times

---

Plaintiffs of their claims for declaratory relief claim for reasons that JetBlue now disavows.

14

a year.  *Id.* at 12:2–4; 12:6–8; 19:22–25.  Plaintiff Crist canceled another JetBlue ticket on April 20, 2025.  Giskan Decl., Ex. 10, ECF No. 77-10.

With the same allegations that led this Court to uphold Plaintiffs' standing at the motion to dismiss stage now substantiated by record evidence, this Court again finds that Plaintiffs have standing to seek injunctive relief.

<b><u>CONCLUSION</u></b>

For the reasons stated above, JetBlue's motion for summary judgment is DENIED.

**SO ORDERED.**

/s/ Nina R. Morrison

NINA R. MORRISON
United States District Judge

Dated: July 6, 2026
       Brooklyn, New York

15